UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| STONE CLINICAL | § | Case No. 21-10923 |
| LABORATORIES LLC | § | |
| *Debtor* | § | Section A |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
REGARDING AMENDED PLAN OF REORGANIZATION FILED BY
THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

On January 12, 2023, this Court held a hearing regarding confirmation of the Amended Plan of Reorganization Filed by the Debtor and the Official Committee of Unsecured Creditors as of December 30, 2022 (the "Plan") [Dkt. No. 663].

Considering the testimony and exhibits introduced into evidence and the arguments of counsel, the Court makes the following findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Rule 9014 (c) of the Federal Rules of Bankruptcy Procedure:[1]

I.    **FINDINGS OF FACT**

1. Filing Date.  This Chapter 11 case was commenced by the filing of an involuntary petition on July 15, 2021 [Dkt. No. 1].

2. Order for Relief.  On January 10, 2022, this Court entered its Order for Relief [Dkt. No. 57].

---

[1]    To the extent that any of the following findings of fact are determined to be conclusions of law, they are adopted and shall be construed and deemed conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted and shall be construed and deemed as findings of fact.

3.   <u>Jurisdiction and Venue.</u>  This Court has jurisdiction over this Chapter 11 case, the parties, and the Debtor's property pursuant to 28 U.S.C. § 1334.  Confirmation of a plan of reorganization is a core proceeding under to 28 U.S.C. § 157(b)(2)(L).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This Court has authority to issue the confirmation order as a final order.

4.   <u>The Committee.</u>  On February 3, 2022, the Office of the United States Trustee (the "UST") appointed the Official Committee of Unsecured Creditors, pursuant to 11 U.S.C. § 1102.  [Dkt. No. 157].  On December 6, 2022, the Committee filed its Notice of Resignation of Committee Member.  [Dkt. No. 634].  Thereafter, on December 29, 2023, the UST filed its Notice of Appointment of Reconstituted Official Committee of Unsecured Creditors.  [Dkt. No. 660].

5.   <u>The Plan.</u>  On August 12, 2022, the Plan of Reorganization Filed by the Debtor and the Official Committee of Unsecured Creditors was filed [Dkt. No. 520].  On December 2 and 30, 2022, [Dkt. Nos. 613, 614, and 662] the Plan Proponents[2] filed immaterial modifications to the Plan.  On December 30, 2022, the Plan Proponents filed supplements to the Plan.  [Dkt. Nos. 661 and 664].  On December 30, 2022, the Plan Proponents filed the Amended Plan of Reorganization Filed by the Debtor and the Official Committee of Unsecured Creditors as of December 30, 2022 [Dkt. No. 663].

6.   <u>Solicitation and Notice.</u>  On November 2, 2022, after notice and hearing the Court entered its Order Approving Disclosure Statement [Dkt. No. 592] approving the Amended Disclosure Statement as of October 7, 2022 (the "Disclosure Statement").  On November 4, 2022, the Debtor served the Order Approving Disclosure Statement on all parties in interest and supplied copies of the Plan, the Disclosure Statement, and a form of ballot on all creditors solicited to vote in

---

[2]     Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

accordance with the Order Approving Disclosure Statement.  The foregoing notice was adequate under the circumstances.  No other or further notice is necessary or required.

7. <u>No Additional Disclosure.</u>  At the hearing held on January 12, 2023, this Court entered an order deeming the modifications and plan supplements filed by the Plan Proponents to be immaterial. At the Confirmation Hearing, the Plan Proponents made two other modifications at the outset.  These modifications (a) limited the exculpated parties to merely the Debtor, the Unsecured Creditors Committee and it members and (b) allowed Christopher Ridgeway, the Stone Entities and/or Whale Capital to assert and/or maintain a claim under 11 U.S.C. § 510(c) that the claim of Christopher Ridgeway, the Stone Entities and/or Whale Capital should be subordinated below the claim of such party bringing the Section 510(c) action.  Pursuant to Bankruptcy Rule 3019, the immaterial modifications and plan supplements filed by the Plan Proponents do not require additional disclosure under 11 U.S.C. § 1125 or the re-solicitation of votes under 11 U.S.C. § 1126, nor do they require that the holders of claims or equity interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan, as they comply with 11 U.S.C. § 1127 and Bankruptcy Rule 3019.

8. <u>Judicial Notice.</u>  The Court takes judicial notice of the docket maintained in this Chapter 11 Cases by the Clerk of Court, including, without limitation, all pleadings and other documents filed, all Orders entered, and all evidence and arguments made, proffered, or adduced at hearings in this case.

9. <u>Voting.</u>  Votes on the Plan were solicited after disclosure of "adequate information" as defined in 11 U.S.C. § 1125.  As evidenced by the tabulations of ballots [Dkt. Nos. 632, 646, and 670] , votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and

in a manner consistent with the Order Approving Disclosure Statement, the Bankruptcy Code, and the Bankruptcy Rules. No party filed any pleading seeking to challenge the ballot tabulations.

10. <u>Ballot Tabulations.</u>  As reflected in the Second Amended Certification of Tabulation of Ballots [Dkt. No. 670, pursuant to 11 U.S.C. §§ 1124 and 1126: Classes 1, 2, 3, 5, 6,[3] and 8 are impaired by the Plan. Therefore, holders of such claims were entitled to vote on the Plan.  Class 7, holders of interests are also impaired.  11 U.S.C. § 1126(g)  Classes 4 and 9 no longer exist.  Classes 5, 7, and 8 voted to reject the Plan.  Classes 3 and 6 voted to accept the Plan.

11. <u>Objections to Confirmation.</u>  The following objections to the Plan were filed by parties in interest:

- Objection of Whale Capital, LP to Confirmation of Amended Plan of Reorganization filed by the Debtor and the Official Committee of Unsecured Creditors as of October 7, 2022, with Incorporated Memorandum [Dkt. No. 625] and the Restated Supplemental and Amended Objection of Whale Capital L.P To Confirmation of Amended Plan of Reorganization Filed By the Debtor and the Official Committee of Unsecured Creditors as of December 30th [Dkt. No. 681] (collectively, the "Whale Objection");

- Objection to Confirmation of "Amended Plan of Reorganization filed by the Debtor and the Official Committee of Unsecured Creditors as of October 7, 2022" with Certificate of Service [ Dkt. No. 610], filed by 615 Baronne St., LLC;

- Christopher Ridgeway's Objection to Confirmation of Amended Plan of Reorganization filed by the Debtor and the Official Committee of Unsecured Creditors as of October 7, 2022 [Dkt. No. 618];

- Objection to Confirmation filed by Nole Holding Corp. a/k/a Nole Financial [Dkt. No. 620]; and

- Objection to Amended Plan of Reorganization filed by the Debtor and the Official Committee of Unsecured Creditors as of October 7, 2022 filed by the UST [Dkt. No. 626].

The modifications to the Plan made prior to the hearing resolved the objections filed by Nole Holding Corp., 615 Baronne St., LLC, and Christopher Ridgeway.  Additional modifications to

---

[3]     The Plan places Whale Capital Management, Inc.'s claim in Class 5: Whale Capital Management, Inc. submitted ballots in both Class 5 and Class 6. The Plan Proponents properly calculated the ballots for Class 6 without regard to the ballot for Whale Capital Management, Inc.

the plan were agreed to by the Plan Proponents during the hearing (and reflected in the Amended Plan of Reorganization Filed by the Debtor and the Official Committee of Unsecured Creditors as of January 14, 2023 (the "Amended Plan") [Dkt. No. 689].  As a result, the remaining objections were those of Whale Capital and the UST and were limited to the following issues:  (a) the sale of the equity in the Debtor following the transfer of all assets to the Liquidation Trust; (b) gerrymandering of the classes of creditors; (c) and the necessity for and composition of the Liquidating Trust Oversight Committee.

12. <u>Good Faith.</u>  Each of these remaining issues turns on the question of whether the plan was proposed in good faith as required by 11 U.S.C § 1129 (a)(3), which is determined based on the totality of the circumstances.  The testimony of Dwayne Murray, the chief operating officer of the Debtor and the proposed Liquidating Trustee, was credible and persuasive on this question.  Mr. Murray has a wealth of experience liquidating assets.  Mr. Murray is disinterested and is an honest broker.  Accordingly, the Court placed substantial weight on his testimony.

13. <u>Sale of the Equity Interest.</u>  Upon the occurrence of the Effective Date, the Debtor will have no assets.  Stone NOLA Acquisition, LLC ( "Stone NOLA")[4] made a $25,000 offer to acquire the equity interest in the Debtor.  No other offer was received.  Mr. Murray testified that if he were acting as a Chapter 7 trustee, he would have abandoned the equity interest as burdensome to the estate.  Mr. Murray testified that counsel for the Plan Proponents negotiated with Stone NOLA and Ridgeway's counsel, which resulted in the offer to purchase the equity interest for $25,000 plus the waiver of any administrative and gap claims held by Mr. Ridgeway or Stone Capital.  Mr. Murray further testified that an additional benefit of selling the interest was that he, as the

---

[4]     Stone NOLA is now known as Stone Clinical Laboratories, LLC, a Florida Limited Liability Company.

Liquidating Trustee, would not have to incur the expense associated with winding up the entity and dissolving it in accordance with Louisiana law.   No other bid was received, even though the Disclosure Statement notified all parties in interest that higher offers would be considered.  Stone NOLA made its purchase offer after it acquired all of the Debtor's operating assets.  The interest could only have value to Stone NOLA or companies which Mr. Ridgeway owns, directly or indirectly.

With regard to the sale of the equity interest, the Court is familiar with the three standard methods of valuing assets but determined that they are not helpful to the Court in this instance. Each methodology would involve the expenditure of money that this Debtor does not have and cannot justify expending in this context.  The membership interest at issue is simply the shell of a limited liability company.  Mr. Murray has first-hand knowledge of the value of that interest and he testified that it had no value in the hands of the Debtor (and that it may well be burdensome to the estate).   In this context, the Court may and will utilize a common-sense approach.   The membership interest only has value to Stone NOLA (a Florida entity which acquired the Debtor's assets, including its name, in a sale previously authorized by this Court [Dkt. No. 486]). Accordingly, there is only one possible buyer for this interest, which placed the Plan Proponents in a weak bargaining position. Mr. Murray also testified that the Debtor has an interest in seeing the entities owned by Mr. Ridgeway survive and prosper as the Liquidating Trust will have substantial claims against Mr. Ridgeway.  This testimony weighs in favor of the sale of the equity interest to Stone NOLA, which is owned directly or indirectly by Mr. Ridgeway.  Given the totality of the circumstances, the Court concludes that the transaction contemplated by Section 5.2 of the Plan satisfies Section 1129 (a)(3) of the Bankruptcy Code as it was proposed in good faith.

14. <u>Classification Issues.</u>  Even though the acceptance of the Plan by Nole Holding establishes an impaired, accepting class whose separate classification is not challenged, the Plan Proponents' "motives and methods for achieving compliance with the voting requirement of § 1129(a)(10) must be scrutinized . . . under the rubric of § 1129(a)(3), which imposes on a plan proponent a duty to propose its plan 'in good faith and not by any means forbidden by law.'"  *In re Vill. at Camp Bowie I, L.P.*, 710 F.3d 239, 247 (5th Cir. 2013); *see also In re Greystone III Joint Venture*, 995 F.2d 1274 (5th Cir. 1991), on reh'g (Feb. 27, 1992).  In this regard, the Plan Proponents had legitimate and wholly permissible reasons for classifying the holders of claims and interests as set forth in the Plan.  These reasons include, but are not limited to:

- Separate classification of a creditor who is the target of litigation.  *In re Heritage Org., LLC*, 375 B.R. 230, 305 (Bankr. N.D. Tex. 2007).

- The fear that including the claim of a creditor (whose claim was subject to subordination on "equitable grounds") in a pool of unsecured creditors may waive such a claim.  *See County of Orange*, 219 B.R. 543 (Bankr. C.D. Cal. 1997).

- Where insider debt is separately classified from non-insider trade debt.  See, *In re Platinum Corral, LLC*, No. 21-00833-5-JNC, 2022 Bankr. LEXIS 87 (Bankr. E.D.N.C. Jan. 13, 2022).

- Where the insider has engaged in inequitable conduct that gave the claimant an unfair advantage.  *In re Dave's Detailing, Inc.*, No. 13-08077 (RLM), 2015 Bankr. LEXIS 2528, at *23-24 (Bankr. S.D. Ind. July 30, 2015).

15. <u>Liquidating Trust Oversight Committee.</u>  The UST objected that the proposed Liquidating Trust Oversight Committee (the "Oversight Committee ) is not necessary.  Whale Capital objected on that basis and that the composition of the Oversight Committee was not proposed in good faith.  Committees such as the Oversight Committee are not unusual.  These committees typical have a small membership and the Plan proposes to import the membership of the Committee to the Oversight Committee.  There is nothing offensive about the membership roster as proposed, especially considering the Plan Proponents' agreement to include a conflict of interest policy in

#6022774v1

the Plan.  Section 1123 (b)(6) of the Code provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of this title."  Accordingly, whether an oversight committee is necessary is not a valid basis on which to object to an otherwise confirmable plan.

16. <u>Cram Down.</u>  Two impaired classes of creditors (Classes 3 and 6) have voted in favor of the Plan.  As the Plan does not discriminate unfairly, is fair and equitable with respect to the classes of claims or interests that did not accept the Plan, confirmation pursuant to 11 U.S.C § 1129(b)(2)(A) & (B) is appropriate.

## II.  CONCLUSIONS OF LAW

1. <u>Bankruptcy Rule 3016</u>. The Plan is dated and identifies the plan sponsor, which satisfies Bankruptcy Rule 3016(a). The filing and noticing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

2. <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying § 1129(a)(1).

3.  <u>Proper Classification (11 U.S.C. §§ 1122 & 1123(a)(1))</u>.  Each of the class of claims or equity interests, as the case may be, in each particular class is substantially similar to the other claims or equity interests in such class and such classifications were otherwise acceptable to each voting class.  Valid business, legal, and factual reasons exist for separately classifying the various claims and equity interests pursuant to the Plan and such claims are of a different rank, status, or character, as the case may be, and the creation of such Classes does not unfairly discriminate between holders of claims and equity interests. The Plan therefore satisfies Sections 1122 and 1123(a)(1).

4. <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.  The Plan designates classes 1, 2, 3, 5, 6 and 8 as impaired within the meaning of Section 1124 of the Bankruptcy Code.

The Plan specifies the treatment of claims and existing equity interests in such classes. The Plan, therefore, satisfies Section 1123(a)(3).

5. No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment for each claim or equity interest in each respective class unless the holder of a particular claim or equity interest has agreed or agrees to a less favorable treatment on account of such claim or equity interest. The Plan, therefore, satisfies Section 1123(a)(4).

6. Implementation of the Plan (11 U.S.C. § 1123(a)(5)). The Plan provides adequate and proper means for the implementation of the Plan as required by Section 1123(a)(5).

7. Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6). To the extent that the equity interest in the Debtor is not sold to a third party, the Plan provides that the Debtor's operating agreement will be restated to: (i) cancel the existing membership interest and authorize the issuance of one new membership interest in the Debtor to be held by the Liquidating Trustee in accordance with the terms of this Plan, and (ii) prohibit the issuance of non-voting equity securities. If the equity interests in the Debtor are not sold to a third party, the Operating Agreement will further be restated to limit the activities of the Post-Effective Date Debtor to matters related to the implementation of this Plan, the monetization of the Debtor's Assets and to matters reasonably incidental thereto. The Plan, therefore, complies with § 1123(a)(6).

8. Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The Plan provides that "[o]n the Effective Date, the Liquidating Trustee will succeed to all the rights and powers of the directors, members, managers of the Debtor or its properly selected appointees and such directors, managers or appointees will be deemed to have resigned on the Effective Date with such members being replaced by the Liquidating Trustee." As such, the Plan satisfies Bankruptcy Code § 1123(a)(7).

9. <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>. The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying Section 1123(b). The failure to address a provision of the Bankruptcy Code specifically in these Findings of Fact and Conclusions of Law or the Confirmation Order shall not diminish or impair the effectiveness of the Confirmation Order.

10. <u>Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2))</u>. In accordance with Section 1123(b)(2), the Plan provides that "[a]ll executory contracts and unexpired leases of the Debtor which are not assumed and/or assigned, or rejected, pursuant to the Plan Supplement prior to the Confirmation Date or pursuant to a Motion to Assume and Assign or Motion to Reject shall be deemed rejected as of the entry of the Confirmation Order." Accordingly, the Plan is consistent with Section 1123(b)(2).

11. <u>Settlement of Claims and Causes of Action (11 U.S.C. § 1123(b)(3))</u>. In accordance with Section 1123(b)(3)(A) and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the settlements, releases, and the provisions of the Plan constitute a good-faith compromise of all claims, equity interests, and controversies relating to the contractual, legal, and subordination rights that all holders of claims or equity interests may have with respect to any allowed claim or equity interest or any distribution to be made on account of such allowed claim or equity interest. Each of the Debtor's Released Parties has contributed significant value to the Debtor, the Plan, and the reorganizational efforts that warrant the releases. The releases, exculpations, and limitation of liability regarding the Debtor's Released Parties, are an integral component of the Plan and are approved. The definition of Debtor's Released Parties is reasonable and appropriately limited.

12. Sale of All or Substantially All Assets (11 U.S.C. § 1123(b)(4)).  The Plan, does not provide for the sale of all or substantially all assets of the Debtor.

13. Modification of Creditor Rights (11 U.S.C. § 1123(b)(5)).   In accordance with § 1123(b)(5), the Plan modifies the rights of holders of claims and interests in Classes 1, 2, 3, 5, 6, and 8. Accordingly, the Plan is consistent with Section 1123(b)(5).

14. Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Order Approving Disclosure Statement, including §§ 1125 and 1126 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018, and 3019, thus satisfying the requirements of Section 1129(a)(2).

15. Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Plan Proponents have proposed the Plan (including all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby complying with Section 1129(a)(3). The Plan Proponents' good faith is evident from the record of this case, including the record of the hearing to approve the Disclosure Statement, the record of the hearing held of January 12, 2023, and other proceedings held in this case.  The Plan is proposed with the legitimate and honest purpose of maximizing the value of the Debtor's Estate  Accordingly, the Plan and the related documents have been filed in good faith and the Plan Proponents have satisfied their obligations under § 1129(a)(3).

16. Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4)).  All payments made or to be made by the Debtor for services or for costs and expenses in connection with the representation of the Debtor's estate within this Chapter 11 case, or in connection with the Plan and incident to this case, have been approved by, or are subject to the approval of, the Court as

reasonable, as required by Sections 327, 328, 329 and 300 of the Bankruptcy Code. The requirements of Section 1129(a)(4) are met.

17. Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Plan satisfies Section 1129(a)(5) as it provides that at confirmation, the terms of the current officers and managers of the Debtor will automatically expire and the Liquidating Trustee will be appointed.

18. No Rate Changes (11 U.S.C. § 1129(a)(6)). No governmental regulatory commission has jurisdiction over the rates of the Debtor. Thus, Section 1129(a)(6) is not applicable.

19. Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The Plan satisfies Section 1129(a)(7) (the best interests of creditors test) because each holder of a claim or equity interest either: (a) has voted to accept the plan; or (b) shall receive or retain under the plan, on account of such claim or equity interest, property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code on such date.

20. Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). As is set forth in the Ballot Tabulation, Classes 3 and 6 have affirmatively voted to accept the Plan. As such, Section 1129(a)(8) of the Bankruptcy Code is satisfied with respect to these classes of claims. Notwithstanding the vote of Classes 5, 7, and 8 to reject, the Plan may nevertheless be confirmed because the Plan otherwise satisfies all elements of Section 1129(a) and satisfies Section 1129(b) of the Bankruptcy Code with respect to these classes because the Plan does not discriminate unfairly and is fair and equitable.

21. Treatment of Administrative Expense Claims and Priority Tax Claims ( 11 U.S.C. § 1129(a)(9)). The treatment of administrative expense claims and priority tax claims under to the Plan satisfies the requirements of Section 1129(a)(9)(C).

22. Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10)). Classes 3 and 6 are impaired under the Plan, were entitled to vote, and voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of Section 1129(a)(10).

23. Feasibility (11 U.S.C. § 1129(a)(11)). Under Section 1129(a)(11), a plan must be feasible, and under the feasibility standard in the Fifth Circuit, a plan need only have a "reasonable probability of success." *Fin. Sec. Assurance Inc v. T–H New Orleans Ltd., P'ship (In re T–H New Orleans Ltd P'ship)*, 116 F.3d 790, 801 (5th Cir. 1997) ("[T]he [bankruptcy] court need not require a guarantee of success ... [o]nly a reasonable assurance of commercial viability is required." (citations omitted)); *see also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *Cajun Elec. Power Coop.*, 230 B.R. 715, 745 (Bankr. M.D. La. 1999); *In re Lakeside Global II Ltd.*, 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989) (noting that the feasibility standard "has been slightly broadened and contemplates whether the debtor can realistically carry out its plan"). The evidence proffered, adduced, and/or presented at the January 12 hearing (a) is reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that the Plan is feasible.

24. Payment of Fees (11 U.S.C. § 1129(a)(12)). The Plan provides for the payment of all fees due the UST and Mr. Murray testified that such fees would be paid. Therefore, the Plan satisfies the requirements of Section 1129(a)(12).

25. Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  The Debtor has no retiree benefits.  Accordingly, Section 1129(a)(13) has no application to this Debtor.

26.  No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, Section 1129(a)(14) is inapplicable.

27. Debtor Is Not an Individual (11 U.S.C. Section 1129(a)(15)).  The Debtor is not an individual. Accordingly, Section 1129(a)(15) is inapplicable.

28.  No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. Section 1129(a)(16)). There are no applicable provisions of nonbankruptcy law governing any transfers contemplated by the Plan.  Moreover, the  Debtor is a moneyed, business, or  commercial limited liability company. Accordingly, Section 1129(a)(16) is inapplicable.

29. No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))   The Plan is confirmable pursuant to Section 1129(b) because, based upon the record before the Court and the treatment provided to the holders of claims and interests that did not vote in favor of the Plan, the Plan does not discriminate unfairly against, and is fair and equitable with respect to such holders and the Plan satisfies all the requirements for confirmation set forth in § 1129(a), except § 1129(a)(8).  First, the Plan does not discriminate unfairly, because no class of claims or equity interests having similar legal rights to the claims or equity interests in the rejecting classes is receiving different treatment under the Plan.  Second, the Plan is "fair and equitable" as to the rejecting classes because (a) no claims or interests junior to any of the rejecting classes will receive or retain any property under the Plan on account of such junior claims or interests.  Based on the foregoing, the requirements of Section 1129(b) are met with respect to the rejecting classes, and the plan may be confirmed notwithstanding the deemed rejection by the rejecting classes.

30. <u>Only One Plan (11 U.S.C. § 1129(c))</u>.  There is only one plan in this case.

31. <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act. The Plan comports with Section 1145 of the Bankruptcy Code with respect to issuance of securities under the Plan.  Accordingly, the Plan satisfies the requirements of Section 1129(d).

32. <u>Small Business Case (11 U.S.C. § 1129(e))</u>.  This Chapter 11 case is not a "small business case," as that term is defined in the Bankruptcy Code.  Accordingly, Section 1129(e) is inapplicable.

33. <u>Good-Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before the Court, including the record of the solicitation done by counsel for the Plan Proponents and the Ballot Tabulations, the Plan Proponents have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including Section 1125(a) and (e), and any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

34. <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with confirmation of the Plan, and all evidence and arguments made, proffered, or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in Section 1129.

35. <u>Implementation</u>. All documents necessary to implement the Plan, have been negotiated in good faith and at arm's length, and entry into and consummation of the transactions contemplated by each such document and agreement is in the best interests of the Debtor, its Estate, and the holders of claims, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal, state, or local law. The Debtor

has exercised reasonable business judgment in its approach to the confirmation process. The Plan Proponents are authorized, without any further notice to, or action, order, or approval of, the Court, to finalize, execute, and deliver all agreements, documents, instruments, and certificates relating to the Plan and to perform their obligations under such agreements, documents, instruments, and certificates in accordance with the Plan. The Court finds that there is no impediment to the occurrence of the Effective Date.

36. <u>Good Faith of the Plan Proponents.</u>  The Plan Proponents principals have acted in good faith (a) in negotiating, formulating, and proposing the Plan and the agreements, compromises, settlements, transactions and transfers contemplated thereby; and (b) in soliciting acceptances to the Plan.  In assessing the good faith standard, courts in the Fifth Circuit consider whether the plan was proposed with "the legitimate and honest purpose to reorganize and has a reasonable hope of success." *See, e.g., In re T-H New Orleans Ltd. P'ship*, 116 F.3d at 802

37. <u>Executory Contracts and Unexpired Leases</u>.  The Plan Proponents have satisfied the provisions of 11 U.S.C. § 365 with respect to the assumption, assumption and assignment, and rejection of executory contracts and unexpired leases pursuant to Article X of the Plan. Under the Plan, all executory contracts and unexpired leases subject to assumption or rejection under § 365 are rejected unless assumed, and the list of assumed contracts contains one agreement. See infra Subpart HHH.

38. <u>Vesting of Assets.</u>  Pursuant to 11 U.S.C. §§ 1141(b)–(c), except as otherwise provided in the Plan or the or this Court's order confirming the Plan, (a) all Assets, including the Cash Fund and Causes of Action, shall not revest in the Debtor or the Post-Effective Date Debtor, but shall be transferred to the Liquidating Trust subject to the jurisdiction of the Bankruptcy Court under the exclusive control of the Liquidating Trustee, until liquidated and distributed to Holders of

Allowed Claims and Interests in accordance with the provisions of this Plan, the Liquidating Trust and (b) all claims and interest shall be canceled.

39. <u>Injunction, Exculpation, and Releases</u>. The Court has jurisdiction under 28 U.S.C. §§ 1334(a) and (b) to approve the injunction, exculpation, and releases set forth in the Plan, because, among other things, those provisions are an integral part of the Plan, and are necessary and appropriate for its implementation. Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases set forth in the Plan if, as has been established here based upon the record in this Chapter 11 Case, the evidence presented at the January 12 hearing, such provisions (a) were integral to the integrated and mutually dependent terms and conditions of the settlement among the various parties in interest embodied in the Plan and are important and essential to the formulation and implementation of the Plan, as provided in § 1123 of the Bankruptcy Code; (b) confer substantial benefits on the Debtor's Estate and creditors; (c) are fair, equitable and reasonable; and (d) are in the best interests of the Debtor, its Estate, and all parties in interest. Further, the exculpation provisions in the Plan do not relieve any party of liability for an act or omission to the extent such act or omission is determined by a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. Based upon the record of this Chapter 11 Case, the evidence proffered or adduced at the Confirmation Hearing and this Court's oral ruling, this Court finds that the injunction, exculpation, and releases set forth in Article XIII of the Plan are consistent with the Bankruptcy Code and applicable law.

40. <u>Compromise and Settlement</u>. Pursuant to Bankruptcy Rule 9019, in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute

a good faith compromise and settlement of all claims, equity interests, or controversies resolved pursuant to the Plan.

41. <u>Independent Review of Findings of Fact and Conclusions of Law, and Confirmation Order.</u> The Court requested draft proposed findings and conclusions and a draft confirmation order from the Plan Proponents ("Post-Hearing Submissions"). The Court has reviewed independently the Post-Hearing Submissions prior to issuance of these Findings of Fact and Conclusions of Law and the Confirmation Order, and where the Court has adopted any of the Post-Hearing Submissions, it did so after careful and independent review.

42. <u>Confirmation Order.</u>  A confirmation order will be separately issued and entered on the docket.

January 22, 2023

Respectfully submitted,

**LISKOW & LEWIS**

Michael D. Rubenstein, La. Bar. No. 22860
1001 Fannin Street, Suite 1800
Houston, Texas  77002
Telephone: (713) 651-2953
Facsimile: (713) 651-2952
Email: mdrubenstein@liskow.com

***Attorneys for the Official Committee of
Unsecured Creditors***

and

**HELLER, DRAPER & HORN, L.L.C.**

*/s/Douglas S. Draper*

Douglas S. Draper, La. Bar No. 5073
ddraper@hellerdraper.com
Leslie A. Collins, La. Bar No. 14891
lcollins@hellerdraper.com
Greta M. Brouphy, La. Bar No. 26216
gbrouphy@hellerdraper.com
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone: (504) 299-3300
Fax: (504) 299-3399
***Attorneys for Stone Clinical Laboratories, LLC***

## CERTIFICATE OF SERVICE

I, hereby certify that on the 22nd day of January, 2023, the above and foregoing was served through the Court's ECF Electronic Notification System by the Clerk of the Court on the following parties who have registered for such notice:

- **Alicia M. Bendana**   abendana@lawla.com, rmichel@lawla.com;seaton@lawla.com
- **Christy Renee Bergeron**   Christy.Bergeron@usdoj.gov
- **Kenneth C. Bordes**   kcb@kennethbordes.com
- **Greta M. Brouphy**   gbrouphy@hellerdraper.com, vgamble@hellerdraper.com
- **Robin B. Cheatham**   cheathamrb@arlaw.com, vicki.owens@arlaw.com;mary.cuenca@arlaw.com
- **Bruce Cranner**   bcranner@talleyanthony.com
- **Albert J. Derbes**   ajdiv@derbeslaw.com, derbespacer@gmail.com;derbeser72443@notify.bestcase.com
- **Douglas S. Draper**   ddraper@hellerdraper.com, vgamble@hellerdraper.com
- **Thomas M. Flanagan**   tflanagan@flanaganpartners.com, scaesar@flanaganpartners.com;mpadilla@flanaganpartners.com;erc@flanaganpartners.com;cscott@flanaganpartners.com;grivera@flanaganpartners.com
- **Patrick R Follette**   prf@chehardy.com, kl@chehardy.com
- **Patrick S. Garrity**   pgarrity@derbeslaw.com, derbeser72443@notify.bestcase.com
- **Amanda Burnette George**   Amanda.B.George@usdoj.gov
- **Olivia Greenberg**   olivia-obrien-9200@ecf.pacerpro.com
- **Paul R. Hage**   phage@jaffelaw.com
- **Anders F Holmgren**   aholmgren@flanaganpartners.com, scaesar@flanaganpartners.com;mpadilla@flanaganpartners.com;erc@flanaganpartners.com;cscott@flanaganpartners.com;grivera@flanaganpartners.com
- **Dennis M. LaBorde**   laborde@bhbmlaw.com, rchauvin@bhbmlaw.com
- **John M. Landis**   jlandis@stonepigman.com, boneil@stonepigman.com
- **Michael E. Landis**   mlandis@hellerdraper.com, Vgamble@hellerdraper.com
- **E. Trent McCarthy**   tmccarthy@themccarthylawfirm.com
- **Mark Mintz**   mmintz@joneswalker.com, mark-mintz-4822@ecf.pacerpro.com
- **Dwayne M. Murray**   dmm@murraylaw.net, la18@ecfcbis.com;trustee3@murraylaw.net
- **Bryan Jules O'Neill**   boneill@derbeslaw.com, bardeneaux@derbeslaw.com
- **Stewart Peck**   speck@lawla.com, rmichel@lawla.com
- **L. Marlene Quarles**   mquarles@dwyercambre.com
- **Ryan James Richmond**   ryan@snw.law
- **Michael D. Rubenstein**   mdrubenstein@liskow.com, lschnabel@Liskow.com
- **Matthew Sherman**   mas@chehardy.com, kl@chehardy.com
- **John Paul Stanford**   jstanford@qslwm.com
- **James Wesley Thurman**   jthurman@lawla.com
- **Office of the U.S. Trustee**   USTPRegion05.NR.ECF@usdoj.gov
- **Nicholas Ryan Varisco**   nrv@chehardy.com
- **David F. Waguespack**   waguespack@carverdarden.com, docket@carverdarden.com;plaisance@carverdarden.com
- **A.J. Webb**   awebb@fbtlaw.com


_____

Michael D. Rubenstein