## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | § | |
| IN RE: | § | CASE NO: 21-10923 |
| | § | |
| STONE CLINICAL LABORATORIES, LLC, | § | CHAPTER 11 |
| | § | |
| | § | SECTION A |
| DEBTOR. | § | |

### ORDER

On January 12, 2023, the Court held a Confirmation Hearing to consider the following: (i) Plan of Reorganization (the "Plan"), as amended, [ECF Docs. 689, 663, 638, 616, 586, 582, 520], jointly filed by the Debtor and the Official Committee of Unsecured Creditors (the "Committee"); and (ii) the following Objections by 615 Baronne St., LLC, [ECF Doc. 610], Christopher Martin Ridgeway, [ECF Doc. 618], Nole Holding Corp., [ECF Doc. 620], Whale Capital, LP, as supplemented, [ECF Docs. 625 & 681], and the Office of the United States Trustee ("UST"), [ECF Doc. 626].

Considering the testimony and exhibits introduced into evidence and the arguments of counsel, and for the reasons stated on the record, the Court makes the following findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure, made applicable to this contested matter by Rule 9014(c) of the Federal Rules of Bankruptcy Procedure:

### FINDINGS OF FACT

1.     Filing Date. This Chapter 11 case was commenced by the filing of an involuntary petition on July 15, 2021. [ECF Doc. 1].

2.     Order for Relief. On January 10, 2022, this Court entered an *Order for Relief*. [ECF Doc. 57].

3.      Jurisdiction and Venue.  This Court has jurisdiction over this Chapter 11 case, the parties, and the Debtor's property pursuant to 28 U.S.C. § 1334.  Confirmation of a plan of reorganization is a core proceeding under 28 U.S.C. § 157(b)(2)(L).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This Court has authority to issue the confirmation order as a final order.

4.      The Committee.  On February 3, 2022, the UST constituted the Committee pursuant to 11 U.S.C. § 1102.  [ECF Doc. 157].  On December 6, 2022, the Committee filed a *Notice of Resignation of Committee Member.*  [ECF Doc. 634].  Thereafter, on December 29, 2022, the UST filed a *Notice of Appointment of Reconstituted Official Committee of Unsecured Creditors.*  [ECF Doc. 660].

5.      The Plan.  On August 12, 2022, the Debtor and the Committee (together, the "Plan Proponents") filed the initial Plan.  [ECF Doc. 520].  On December 2 and 30, 2022, the Plan Proponents filed Immaterial Modifications to the Plan, [ECF Docs. 613, 614, & 662].  On December 30, 2022, the Plan Proponents filed supplements to the Plan.  [ECF Docs. 661 & 664].  On December 30, 2022, the Plan Proponents filed the *Amended Plan of Reorganization Filed by the Debtor and the Official Committee of Unsecured Creditors as of December 30, 2022.*  [ECF Doc. 663]. Following the Confirmation Hearing held on Thursday, January 12, 2023, the Plan Proponents filed the *Amended Plan of Reorganization Filed by the Debtor and the Official Committee of Unsecured Creditors as of January 14, 2023*, [ECF Doc. 689].

6.      Solicitation and Notice.  On November 2, 2022, after notice and hearing, the Court entered an *Order Approving Disclosure Statement*, [ECF Doc. 592], approving the Amended Disclosure Statement as of October 7, 2022 (the "Disclosure Statement").  On November 4, 2022, the Debtor served the *Order Approving Disclosure Statement*, [ECF Doc. 592], on all parties in interest and supplied copies of the Plan, the Disclosure Statement, and a form of ballot on all

creditors solicited to vote in accordance with the Order Approving Disclosure Statement. The foregoing notice was adequate under the circumstances. No other or further notice is necessary or required.

7.  No Additional Disclosure.  At the hearing held on January 12, 2023, this Court found the modifications and plan supplements filed by the Plan Proponents to be immaterial. At the outset of the Confirmation Hearing, the Plan Proponents made two other modifications. Those modifications (a) limited the exculpated parties to merely the Debtor and the Committee and its members and (b) allowed Christopher Ridgeway, the Stone Entities and/or Whale Capital to assert and/or maintain a claim under 11 U.S.C. § 510(c) asserting that the claim of Christopher Ridgeway, the Stone Entities and/or Whale Capital should be subordinated below the claim of such party bringing the § 510(c) action. Pursuant to Bankruptcy Rule 3019, the immaterial modifications and plan supplements filed by the Plan Proponents do not require additional disclosure under 11 U.S.C. § 1125 or the re-solicitation of votes under 11 U.S.C. § 1126, nor do they require that the holders of claims or equity interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan, as they comply with 11 U.S.C. § 1127 and Bankruptcy Rule 3019.

8.  Judicial Notice.  The Court takes judicial notice of the docket maintained in this Chapter 11 Cases by the Clerk of Court, including, without limitation, all pleadings and other documents filed, all Orders entered, and all evidence and arguments made, proffered, or adduced at hearings in this case.

9.  Voting.  Votes on the Plan were solicited after disclosure of "adequate information" as defined in 11 U.S.C. § 1125. As evidenced by the tabulations of ballots, [ECF Docs. 632, 646, & 670] , votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and

in a manner consistent with the Order Approving Disclosure Statement, the Bankruptcy Code, and the Bankruptcy Rules. No party filed any pleading seeking to challenge the ballot tabulations.

10.    <u>Ballot Tabulations.</u>    As reflected in the Second Amended Certification of Tabulation of Ballots, [ECF Doc. 670], pursuant to 11 U.S.C. §§ 1124 and 1126:  Classes 1, 2, 3, 5, 6,[1] and 8 are impaired by the Plan. Therefore, holders of such claims were entitled to vote on the Plan.  Class 7, holders of interests are also impaired.  11 U.S.C. § 1126(g).  Classes 4 and 9 no longer exist.  Classes 5, 7, and 8 voted to reject the Plan.  Classes 3 and 6 voted to accept the Plan.

11.    <u>Objections to Confirmation.</u>  The following objections to the Plan were filed by parties in interest:

- *Objection of Whale Capital, LP to Confirmation of Amended Plan of Reorganization filed by the Debtor and the Official Committee of Unsecured Creditors as of October 7, 2022, with Incorporated Memorandum*, [ECF Doc. 625], and the *Restated Supplemental and Amended Objection of Whale Capital LP To Confirmation of Amended Plan of Reorganization Filed By the Debtor and the Official Committee of Unsecured Creditors as of December 30*, [ECF Doc. 681] (together, the "<u>Whale Objection</u>");

- *Objection to Confirmation of "Amended Plan of Reorganization filed by the Debtor and the Official Committee of Unsecured Creditors as of October 7, 2022" with Certificate of Service*, [ECF Doc. 610], filed by 615 Baronne St., LLC;

- *Christopher Ridgeway's Objection to Confirmation of Amended Plan of Reorganization filed by the Debtor and the Official Committee of Unsecured Creditors as of October 7, 2022*, [ECF Doc. 618];

- *Objection to Confirmation filed by Nole Holding Corp. a/k/a Nole Financial*, [ECF Doc. 620]; and

- *Objection to Amended Plan of Reorganization filed by the Debtor and the Official Committee of Unsecured Creditors as of October 7, 2022 filed by the UST*, [ECF Doc. 626].

---

[1]    The Plan places Whale Capital Management, Inc.'s claim in Class 5: Whale Capital Management, Inc. submitted ballots in both Class 5 and Class 6. The Plan Proponents properly calculated the ballots for Class 6 without regard to the ballot for Whale Capital Management, Inc.

The modifications to the Plan made prior to the hearing resolved the objections filed by Nole Holding Corp., 615 Baronne St., LLC, and Christopher Ridgeway.  Additional modifications to the plan were agreed to by the Plan Proponents during the hearing (and reflected in the Plan of Reorganization Filed by the Debtor and the Official Committee of Unsecured Creditors as of January 14, 2023.  As a result, the remaining objections were those of Whale Capital and the UST and were limited to the following issues:  (a) the sale of the equity in the Debtor following the transfer of all assets to the Liquidation Trust; (b) gerrymandering of the classes of creditors; (c) and the necessity for and composition of the Liquidating Trust Oversight Committee.

12.    Good Faith.  Each of those remaining issues turns on the question of whether the Plan was proposed in good faith as required by 11 U.S.C § 1129 (a)(3), which is determined based on the totality of the circumstances.  *See In re Pearl Res. LLC*, 622 B.R. 259, 260 (Bankr. S.D. Tex. 2020) (citing *In re Sun Country Dev., Inc*., 764 F.2d 406, 408 (5th Cir. 1985)).  The testimony of Dwayne Murray, the chief operating officer of the Debtor and the proposed Liquidating Trustee, was credible and persuasive on this question.  Mr. Murray has a wealth of experience liquidating assets.  Mr. Murray is disinterested and is an honest broker.  Accordingly, the Court placed substantial weight on his testimony.

13.    Sale of the Equity Interest.  Upon the occurrence of the Effective Date, the Debtor will have no assets.  Stone NOLA Acquisition, LLC ("Stone NOLA")[2] made a $25,000 offer to acquire the equity interest in the Debtor.  No other offer was received.  Mr. Murray testified that if he were acting as a Chapter 7 trustee, he would have abandoned the equity interest as burdensome to the estate.  Mr. Murray testified that counsel for the Plan Proponents negotiated

---

[2]    Stone NOLA is now known as Stone Clinical Laboratories, LLC, a Florida Limited Liability Company.

with Stone NOLA and Ridgeway's counsel, which resulted in the offer to purchase the equity interest for $25,000 plus the waiver of any administrative and gap claims held by Mr. Ridgeway or Stone Capital.  Mr. Murray further testified that an additional benefit of selling the interest was that he, as the Liquidating Trustee, would not have to incur the expense associated with winding up the entity and dissolving it in accordance with Louisiana law.  No other bid was received, even though the Disclosure Statement notified all parties in interest that higher offers would be considered.  Stone NOLA made its purchase offer after it acquired all of the Debtor's operating assets.  The interest could only have value to Stone NOLA or companies which Mr. Ridgeway owns, directly or indirectly.

With regard to the sale of the equity interest, the Court is familiar with the three standard methods of valuing assets but determined that they are not helpful to the Court in this instance. Each methodology would involve the expenditure of money that this Debtor does not have and cannot justify expending in this context.  The membership interest at issue is simply the shell of a limited liability company.  Mr. Murray has first-hand knowledge of the value of that interest and he testified that it had no value in the hands of the Debtor (and that it may well be burdensome to the estate).  In this context, the Court may and will utilize a common-sense approach.  The membership interest only has value to Stone NOLA (a Florida entity which acquired the Debtor's assets, including its name, in a sale previously authorized by this Court, [ECF Doc. 486]). Accordingly, there is only one possible buyer for this interest, which placed the Plan Proponents in a weak bargaining position.  Moreover, Mr. Murray also testified that the Debtor has an interest in seeing the entities owned by Mr. Ridgeway survive and prosper as the Liquidating Trust will have substantial claims against Mr. Ridgeway.  That testimony weighs in favor of the sale of the equity interest to Stone NOLA, which is owned directly or indirectly by Mr. Ridgeway.  Given the

totality of the circumstances, the Court concludes that the transaction contemplated by § 5.2 of the Plan satisfies § 1129(a)(3) of the Bankruptcy Code as it was proposed in good faith.

14.    <u>Classification Issues.</u>  Even though the acceptance of the Plan by Nole Holding establishes an impaired, accepting class whose separate classification is not challenged, the Plan Proponents' "motives and methods for achieving compliance with the voting requirement of § 1129(a)(10) must be scrutinized . . . under the rubric of § 1129(a)(3), which imposes on a plan proponent a duty to propose its plan 'in good faith and not by any means forbidden by law.'"  *In re Vill. at Camp Bowie I, L.P.*, 710 F.3d 239, 247 (5th Cir. 2013); *see also In re Greystone III Joint Venture*, 995 F.2d 1274 (5th Cir. 1991), *on reh'g* (Feb. 27, 1992).   In that regard, the Plan Proponents had legitimate and wholly permissible reasons for classifying the holders of claims and interests as set forth in the Plan, specifically the decision to classify Whale Capital in its own class. These reasons include, but are not limited to:

- Separate classification of a creditor who is the target of litigation.  *In re Heritage Org., LLC*, 375 B.R. 230, 305 (Bankr. N.D. Tex. 2007).

- The fear that including the claim of a creditor (whose claim was subject to subordination on "equitable grounds") in a pool of unsecured creditors may waive such a claim.  *See County of Orange*, 219 B.R. 543 (Bankr. C.D. Cal. 1997).

- Where insider debt is separately classified from non-insider trade debt.  See, *In re Platinum Corral, LLC*, No. 21-00833-5-JNC, 2022 Bankr. LEXIS 87 (Bankr. E.D.N.C. Jan. 13, 2022).

- Where the insider has engaged in inequitable conduct that gave the claimant an unfair advantage.  *In re Dave's Detailing, Inc.*, No. 13-08077 (RLM), 2015 Bankr. LEXIS 2528, at *23-24 (Bankr. S.D. Ind. July 30, 2015).

15.    <u>Liquidating Trust Oversight Committee.</u>  The UST objected to the proposed Liquidating Trust Oversight Committee (the "<u>Oversight Committee</u>), asserting that such oversight of the Liquidating Trustee (Mr. Murray) is not necessary.  Whale Capital objected on that basis as well, but further objected to the composition of the Oversight Committee, asserting that it was not

proposed in good faith. Committees such as the Oversight Committee are not unusual. These committees typically have a small membership, and the Plan proposes to import the membership of the three-member Committee to the Oversight Committee. There is nothing offensive about the membership roster as proposed, especially considering the Plan Proponents' agreement to include a conflict-of-interest policy in the Plan. Section 1123(b)(6) of the Code provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of this title." Accordingly, whether an oversight committee is necessary is not a valid basis on which to object to an otherwise confirmable plan.

16.     <u>Cram Down.</u>  Two impaired classes of creditors (Classes 3 and 6) have voted in favor of the Plan. As the Plan does not discriminate unfairly, it is fair and equitable with respect to the classes of claims or interests that did not accept the Plan, confirmation pursuant to 11 U.S.C § 1129(b)(2)(A) & (B) is appropriate.

## CONCLUSIONS OF LAW

1.     <u>Bankruptcy Rule 3016</u>. The Plan is dated and identifies the plan sponsor, which satisfies Bankruptcy Rule 3016(a). The filing and noticing of the Disclosure Statement satisfied Bankruptcy Rule 3016(b).

2.     <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying § 1129(a)(1).

3.     <u>Proper Classification (11 U.S.C. §§ 1122 & 1123(a)(1))</u>. Each of the class of claims or equity interests, as the case may be, in each particular class is substantially similar to the other claims or equity interests in such class and such classifications were otherwise acceptable to each voting class. Valid business, legal, and factual reasons exist for separately classifying the various claims and equity interests pursuant to the Plan and such claims are of a different rank, status, or character, as the case may be, and the creation of such Classes does not unfairly

discriminate between holders of claims and equity interests. The Plan therefore satisfies §§ 1122 and 1123(a)(1).

4.      Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).   The Plan designates classes 1, 2, 3, 5, 6 and 8 as impaired within the meaning of § 1124 of the Bankruptcy Code.  The Plan specifies the treatment of claims and existing equity interests in such classes.  The Plan, therefore, satisfies § 1123(a)(3).

5.      No Discrimination (11 U.S.C. § 1123(a)(4)).   The Plan provides for the same treatment for each claim or equity interest in each respective class unless the holder of a particular claim or equity interest has agreed or agrees to a less favorable treatment on account of such claim or equity interest.  The Plan, therefore, satisfies § 1123(a)(4).

6.      Implementation of the Plan (11 U.S.C. § 1123(a)(5)).   The Plan provides adequate and proper means for the implementation of the Plan as required by § 1123(a)(5).

7.      Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6).  To the extent that the equity interest in the Debtor is not sold to a third party, the Plan provides that the Debtor's operating agreement will be restated to: (i) cancel the existing membership interest and authorize the issuance of one new membership interest in the Debtor to be held by the Liquidating Trustee in accordance with the terms of this Plan, and (ii) prohibit the issuance of non-voting equity securities.  If the equity interests in the Debtor are not sold to a third party, the Operating Agreement will further be restated to limit the activities of the Post-Effective Date Debtor to matters related to the implementation of this Plan, the monetization of the Debtor's Assets and to matters reasonably incidental thereto.   The Plan, therefore, complies with § 1123(a)(6).

8.      <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.  The Plan provides that "[o]n the Effective Date, the Liquidating Trustee will succeed to all the rights and powers of the directors, members, managers of the Debtor or its properly selected appointees and such directors, managers or appointees will be deemed to have resigned on the Effective Date with such members being replaced by the Liquidating Trustee."  As such, the Plan satisfies Bankruptcy Code § 1123(a)(7).

9.      <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>.  The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying § 1123(b). The failure to address a provision of the Bankruptcy Code specifically in these Findings of Fact and Conclusions of Law or the Confirmation Order shall not diminish or impair the effectiveness of the Confirmation Order.

10.     <u>Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2))</u>.  In accordance with § 1123(b)(2), the Plan provides that "[a]ll executory contracts and unexpired leases of the Debtor which are not assumed and/or assigned, or rejected, pursuant to the Plan Supplement prior to the Confirmation Date or pursuant to a Motion to Assume and Assign or Motion to Reject shall be deemed rejected as of the entry of the Confirmation Order." Accordingly, the Plan is consistent with § 1123(b)(2).

11.     <u>Settlement of Claims and Causes of Action (11 U.S.C. § 1123(b)(3))</u>.  In accordance with § 1123(b)(3)(A) and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the settlements, releases, and the provisions of the Plan constitute a good-faith compromise of all claims, equity interests, and controversies relating to the contractual, legal, and subordination rights that all holders of claims or equity interests may have with respect to any allowed claim or equity interest or any distribution

to be made on account of such allowed claim or equity interest.  Each of the Debtor's Released

Parties has contributed significant value to the Debtor, the Plan, and the reorganizational efforts

that warrant the releases.  The releases, exculpations, and limitation of liability regarding the

Debtor's Released Parties, are an integral component of the Plan and are approved. The definition

of Debtor's Released Parties is reasonable and appropriately limited.

12.     <u>Sale of All or Substantially All Assets (11 U.S.C. § 1123(b)(4))</u>.  The Plan, does

not provide for the sale of all or substantially all assets of the Debtor.

13.     <u>Modification of Creditor Rights (11 U.S.C. § 1123(b)(5))</u>.  In accordance with

§ 1123(b)(5), the Plan modifies the rights of holders of claims and interests in Classes 1, 2, 3, 5,

6, and 8. Accordingly, the Plan is consistent with § 1123(b)(5).

14.     <u>Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The Plan

Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy

Rules, and the Order Approving Disclosure Statement, including §§ 1125 and 1126 of the

Bankruptcy Code and Bankruptcy Rules 3017, 3018, and 3019, thus satisfying the requirements

of § 1129(a)(2).

15.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Plan Proponents have

proposed the Plan (including all documents necessary to effectuate the Plan) in good faith and not

by any means forbidden by law, thereby complying with § 1129(a)(3). The Plan Proponents' good

faith is evident from the record of this case, including the record of the hearing to approve the

Disclosure Statement, the record of the hearing held of January 12, 2023, and other proceedings

held in this case.  The Plan is proposed with the legitimate and honest purpose of maximizing the

value of the Debtor's Estate.  Accordingly, the Plan and the related documents have been filed in

good faith and the Plan Proponents have satisfied their obligations under § 1129(a)(3).

16.     <u>Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4))</u>.  All payments made or to be made by the Debtor for services or for costs and expenses in connection with the representation of the Debtor's estate within this Chapter 11 case, or in connection with the Plan and incident to this case, have been approved by, or are subject to the approval of, the Court as reasonable, as required by §§ 327, 328, 329 and 300 of the Bankruptcy Code.  The requirements of § 1129(a)(4)are met.

17.     <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>.  The Plan satisfies § 1129(a)(5) as it provides that, at confirmation, the terms of the current officers and managers of the Debtor will automatically expire and the Liquidating Trustee will be appointed.

18.     <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>.  No governmental regulatory commission has jurisdiction over the rates of the Debtor. Thus, § 1129(a)(6) is not applicable.

19.     <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>.  The Plan satisfies § 1129(a)(7) (the best interests of creditors test) because each holder of a claim or equity interest either: (a) has voted to accept the plan; or (b) shall receive or retain under the plan, on account of such claim or equity interest, property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code on such date.

20.     <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  As is set forth in the Ballot Tabulation, Classes 3 and 6 have affirmatively voted to accept the Plan. As such, § 1129(a)(8) is satisfied with respect to those classes of claims.  Notwithstanding the votes of Classes 5, 7, and 8 to reject, the Plan may nevertheless be confirmed because the Plan otherwise satisfies all elements of § 1129(a) and satisfies § 1129(b) of the Bankruptcy Code with respect to those classes because the Plan does not discriminate unfairly and is fair and equitable.

21. <u>Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of administrative expense claims and priority tax claims under to the Plan satisfies the requirements of § 1129(a)(9)(C).

22. <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>. Classes 3 and 6 are impaired under the Plan, were entitled to vote, and voted to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of § 1129(a)(10).

23. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. Under § 1129(a)(11), a plan must be feasible, and under the feasibility standard in the Fifth Circuit, a plan need only have a "reasonable probability of success." *Fin. Sec. Assurance Inc v. T–H New Orleans Ltd., P'ship (In re T–H New Orleans Ltd P'ship)*, 116 F.3d 790, 801 (5th Cir. 1997) ("[T]he [bankruptcy] court need not require a guarantee of success . . . [o]nly a reasonable assurance of commercial viability is required." (citations omitted)); *see also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988) ("[T]he feasibility standard is whether the plan offers a reasonable assurance of success. Success need not be guaranteed."); *In re Cajun Elec. Power Coop.*, 230 B.R. 715, 745 (Bankr. M.D. La. 1999); *In re Lakeside Global II Ltd.*, 116 B.R. 499, 506 (Bankr. S.D. Tex. 1989) (noting that the feasibility standard "has been slightly broadened and contemplates whether the debtor can realistically carry out its plan"). The evidence proffered, adduced, and/or presented at the January 12 hearing (a) is reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that the Plan is feasible.

24.     <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>.  The Plan provides for the payment of all fees due the UST and Mr. Murray testified that such fees would be paid.  Therefore, the Plan satisfies the requirements of § 1129(a)(12).

25.     <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>.  The Debtor has no retiree benefits.  Accordingly, § 1129(a)(13) has no application to this Debtor.

26.     <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>.  The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, § 1129(a)(14) is inapplicable.

27.     <u>Debtor Is Not an Individual (11 U.S.C. § 1129(a)(15))</u>.  The Debtor is not an individual. Accordingly, § 1129(a)(15) is inapplicable.

28.     <u>No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>.  There are no applicable provisions of nonbankruptcy law governing any transfers contemplated by the Plan.  Moreover, the Debtor is a moneyed, business, or commercial limited liability company. Accordingly, § 1129(a)(16) is inapplicable.

29.     <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>  The Plan is confirmable pursuant to § 1129(b) because, based upon the record before the Court and the treatment provided to the holders of claims and interests that did not vote in favor of the Plan, the Plan does not discriminate unfairly against, and is fair and equitable with respect to such holders and the Plan satisfies all the requirements for confirmation set forth in § 1129(a), except § 1129(a)(8).  First, the Plan does not discriminate unfairly, because no class of claims or equity interests having similar legal rights to the claims or equity interests in the rejecting classes is receiving different treatment under the Plan.  Second, the Plan is "fair and equitable" as to the rejecting classes because (a) no claims or interests junior to any of the rejecting classes will receive

or retain any property under the Plan on account of such junior claims or interests. Based on the foregoing, the requirements of § 1129(b) are met with respect to the rejecting classes, and the plan may be confirmed notwithstanding the deemed rejection by the rejecting classes.

30. <u>Only One Plan (11 U.S.C. § 1129(c))</u>. There is only one plan in this case.

31. <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of § 5 of the Securities Act. The Plan comports with § 1145 of the Bankruptcy Code with respect to issuance of securities under the Plan. Accordingly, the Plan satisfies the requirements of § 1129(d).

32. <u>Small Business Case (11 U.S.C. § 1129(e))</u>. This Chapter 11 case is not a "small business case," as that term is defined in the Bankruptcy Code. Accordingly, § 1129(e) is inapplicable.

33. <u>Good-Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the Court, including the record of the solicitation done by counsel for the Plan Proponents and the Ballot Tabulations, the Plan Proponents have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including § 1125(a) and (e), and any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

34. <u>Satisfaction of Confirmation Requirements.</u> Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations, and affidavits filed in connection with confirmation of the Plan, and all evidence and arguments made, proffered, or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in § 1129.

35. <u>Implementation.</u> All documents necessary to implement the Plan, have been negotiated in good faith and at arm's length, and entry into and consummation of the transactions

contemplated by each such document and agreement is in the best interests of the Debtor, its Estate, and the holders of claims, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal, state, or local law. The Debtor has exercised reasonable business judgment in its approach to the confirmation process. The Plan Proponents are authorized, without any further notice to, or action, order, or approval of, the Court, to finalize, execute, and deliver all agreements, documents, instruments, and certificates relating to the Plan and to perform their obligations under such agreements, documents, instruments, and certificates in accordance with the Plan. The Court finds that there is no impediment to the occurrence of the Effective Date.

36.     <u>Good Faith of the Plan Proponents.</u>  The Plan Proponents principals have acted in good faith (a) in negotiating, formulating, and proposing the Plan and the agreements, compromises, settlements, transactions and transfers contemplated thereby; and (b) in soliciting acceptances to the Plan. In assessing the good faith standard, courts in the Fifth Circuit consider whether the plan was proposed with "the legitimate and honest purpose to reorganize and has a reasonable hope of success." *See, e.g., In re T-H New Orleans Ltd. P'ship*, 116 F.3d at 802

37.     <u>Executory Contracts and Unexpired Leases.</u>  The Plan Proponents have satisfied the provisions of 11 U.S.C. § 365 with respect to the assumption, assumption and assignment, and rejection of executory contracts and unexpired leases pursuant to Article X of the Plan. Under the Plan, all executory contracts and unexpired leases subject to assumption or rejection under § 365 are rejected unless assumed, and the list of assumed contracts contains one agreement.

38.     <u>Vesting of Assets.</u>  Pursuant to 11 U.S.C. §§ 1141(b)–(c), except as otherwise provided in the Plan or the or this Court's order confirming the Plan, (a) all Assets, including the Cash Fund and Causes of Action, shall not revest in the Debtor or the Post-Effective Date Debtor,

but shall be transferred to the Liquidating Trust subject to the jurisdiction of the Bankruptcy Court under the exclusive control of the Liquidating Trustee, until liquidated and distributed to Holders of Allowed Claims and Interests in accordance with the provisions of this Plan, the Liquidating Trust and (b) all claims and interest shall be canceled.

39. <u>Injunction, Exculpation, and Releases</u>. The Court has jurisdiction under 28 U.S.C. §§ 1334(a) and (b) to approve the injunction, exculpation, and releases set forth in the Plan, because, among other things, those provisions are an integral part of the Plan, and are necessary and appropriate for its implementation. Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases set forth in the Plan if, as has been established here based upon the record in this Chapter 11 Case, the evidence presented at the January 12 hearing, such provisions (a) were integral to the integrated and mutually dependent terms and conditions of the settlement among the various parties in interest embodied in the Plan and are important and essential to the formulation and implementation of the Plan, as provided in § 1123 of the Bankruptcy Code; (b) confer substantial benefits on the Debtor's Estate and creditors; (c) are fair, equitable and reasonable; and (d) are in the best interests of the Debtor, its Estate, and all parties in interest. Further, the exculpation provisions in the Plan do not relieve any party of liability for an act or omission to the extent such act or omission is determined by a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. Based upon the record of this Chapter 11 Case, the evidence proffered or adduced at the Confirmation Hearing and this Court's oral ruling, this Court finds that the injunction, exculpation, and releases set forth in Article XIII of the Plan are consistent with the Bankruptcy Code and applicable law.

40. <u>Compromise and Settlement</u>. Pursuant to Bankruptcy Rule 9019, in consideration of the distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all claims, equity interests, or controversies resolved pursuant to the Plan.

41. <u>Independent Review of Findings of Fact and Conclusions of Law, and Confirmation Order.</u> The Court requested draft proposed findings and conclusions and a draft confirmation order from the Plan Proponents ("<u>Post-Hearing Submissions</u>"). The Court has reviewed independently the Post-Hearing Submissions prior to issuance of these Findings of Fact and Conclusions of Law and the Confirmation Order, and where the Court has adopted any of the Post-Hearing Submissions, it did so after careful and independent review.

Accordingly,

**IT IS ORDERED** that the Plan, [ECF Doc. 689] is **CONFIRMED** with any objections or responses to the Plan that were not withdrawn being overruled for the reasons set forth in open Court and in the findings of fact and conclusions of law entered by the Court.  A copy of the Plan is attached hereto as **Exhibit A**.

**IT IS FURTHER ORDERED** that the Debtor shall timely pay to the United States Trustee any and all post-confirmation quarterly fees, as required by 28 U.S.C. § 1930(a)(6), including all fees due upon the transfer of the property of the estate to the Liquidating Trust.

**IT IS FURTHER ORDERED** that Movant shall serve this Order on the required parties who will not receive a copy through the ECF system pursuant to the Federal Rules of Bankruptcy Procedure and the LBRs and file a certificate of service to that effect within three (3) days.

New Orleans, Louisiana, February 2, 2023.

_____

MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **STONE CLINICAL LABORATORIES LLC** *Debtor* | **CASE NO.: 21-10923** **SECTION:  A** |

## AMENDED PLAN OF REORGANIZATION FILED BY THE DEBTOR AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AS OF JANUARY 14, 2023

| LISKOW & LEWIS, APLC | HELLER, DRAPER & HORN, L.L.C. |
|---|---|
| MICHAEL D. RUBENSTEIN (# 22860) mdrubenstein@liskow.com 1001 Fannin Street, Suite 1800 Houston, TX  77002 Telephone: (713) 651-2953 Fax: (713) 651-2908 | DOUGLAS S. DRAPER (#5073) ddraper@hellerdraper.com 650 Poydras Street, Suite 2500 New Orleans, LA  70130 Telephone: (504) 299-3300 Fax: (504) 299-3399 |
| *Attorneys for the Official Committee of Unsecured Creditors* | *Attorneys for Stone Clinical Laboratories LLC* |

Dated:  January 14, 2023

Stone Clinical Laboratories LLC (the "Debtor"), as Debtor and Chapter 11 Debtor-in-Possession and the Official Committee of Unsecured Creditors ("Committee") are Plan Proponents who propose the following Plan (as defined herein) for the resolution of the outstanding Claims against the Debtor.  Reference is made to the Disclosure Statement (as defined herein), distributed contemporaneously herewith, for a discussion of the Debtor's history, business, properties and operations, risk factors, a summary and analysis of this Plan, and certain related matters.  Subject to certain restrictions and requirements set forth herein and in 11 U.S.C. § 1127 and Fed. R. Bankr. P. 3019, the Plan Proponents reserve their right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation in accordance with the terms hereof, the Confirmation Order (as defined herein), and the Bankruptcy Code (as defined herein).

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

A.    Defined Terms. As used herein, capitalized terms shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code, the Bankruptcy Rules or the Local Rules, shall have the meaning given to that term in the Bankruptcy Code, the Bankruptcy Rules or the Local Rules, as applicable.

1.1    Accounts shall have the meaning as defined in the Uniform Commercial Code.

1.2    Administrative Expense means an expense of the Debtor for costs and expenses of administration of the Bankruptcy Case (including, without limitation, expenses arising under Sections 327, 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2) and 1114(e) of the Bankruptcy Code) including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtor's Estate and operating the business of the Debtor; (b) all compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 328, 330 or 503(b) of the Bankruptcy Code; (c) any indebtedness or obligations incurred or assumed by the Debtor, as Debtor-in-Possession, during the Bankruptcy Case; and (d) out-of-pocket expenses incurred by members of the Creditors' Committee (excluding any fees or expenses for legal or financial advisors except as otherwise provided herein).  All fees and charges assessed against the Debtor's Estate under Section 1930, Chapter 123, of Title 28 of the United States Code are excluded from the definition of Administrative Expense and shall be paid in accordance with Section 10.8 of the Plan.

1.3    Allowance or Allowed means, with respect to a Claim, Administrative Expense against the Debtor, or any portion thereof, in any Class or category specified, (a) a Claim which has been listed by the Debtor in its Schedules, as may be amended by the Debtor from time to time, in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary assertion has been filed, (b) a Claim or Administrative Expense as to which no objection or request for estimation has been filed within the later of: (i) one hundred twenty (120) days after the Effective Date or (ii) one hundred twenty (120) days after the filing of such Claim, or Administrative Expense, subject to further extension upon *ex parte* motion; or (c) a Claim or Administrative Expense that is expressly allowed (i) by an Order, or (ii) pursuant to the terms of this Plan; *provided, however*, that Claims allowed solely for the

purpose of voting to accept or reject the Plan pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed" Claims hereunder.

1.4  Assets means any and all right, title, and interest of the Debtor in and to property of whatever type or nature.

1.5  Asset Sales means any and all sales of the Assets.

1.6  Atlantes shall mean Atlantes Corporate Finance LLC.

1.7  Atlantes Secured Claim shall mean any Atlantes secured claim possessed by Atlantes that is secured by any asset of the Debtor.

1.8  Ballot means the forms distributed to each Holder of Impaired Claims, if any, entitled to vote on the Plan for the purposes of accepting or rejecting this Plan.

1.9  Bankruptcy Case means the consent by the Debtor to the entry of an order for relief dated January 10, 2022, in the U.S. Bankruptcy Court for the Eastern District of Louisiana under Chapter 11 of the Bankruptcy Code.

1.10  Bankruptcy Code means Title 11 of the United States Code, as now in effect or hereafter amended, as applicable to the Bankruptcy Case.

1.11  Bankruptcy Court means the United States Bankruptcy Court for the Eastern District of Louisiana or any other court with jurisdiction over the Bankruptcy Case.

1.12  Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of Title 28 of the United States Code, as now in effect or hereafter amended.

1.13  Bar Date Order means the Order entered by the Bankruptcy Court establishing a bar date.

1.14  Business Day means any day other than a Saturday, a Sunday or "legal holiday" (as defined in Bankruptcy Rules).

1.15  Cash Fund shall mean the fund created for the payments set forth in this Plan created from the sale of the Debtor's Assets, the cash on hand on the Effective Date, the Debtor's accounts, and the recoveries from Causes of Action.

1.16  Causes of Action means all Claims, rights, causes of action, defenses, demands, damages, suits or proceedings of any kind or nature, whether under contract or tort, in law or in equity or otherwise, whether known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto, including (i) causes of action arising under Chapter 5 of the Bankruptcy Code or similar state statutes, (ii) derivative claims of the Debtor or Debtor-in-Possession or the estate pursuant to state or non-bankruptcy laws, the Bankruptcy Code or any statute or legal theory or under equity, (iii) any rights to, claims, or Causes of Action for recovery under policies of insurance issued to or on behalf of the Debtor or Debtor-

- 3 –

in-Possession or the Estate, and (iv) any rights, claims and Causes of Action of the Debtor or Debtor-in-Possession or the Estate against any of its former or current officers, directors, or managers arising under any state or other non-bankruptcy law or arising under the Bankruptcy Code or Bankruptcy laws for any act or omission or breach of duty of such officer, director, or manager, and with respect to each claim or cause of action described in (i)-(iv), whether or not litigation has been commenced with respect to such action or claim as of the Effective Date, that the Debtor, the Creditors' Committee, a trustee or the Estate may hold or assert against any person or entity as of or following the Effective Date, unless otherwise expressly waived or specifically released pursuant to this Plan.  For the avoidance of doubt, Causes of Action include, without limitation, those items set forth on the Causes of Action Exhibit to the Plan Supplement.

1.17    Claim means a "claim," as defined in Section 101(5) of the Bankruptcy Code which shall include any asserted administrative, priority, gap period, secured or undersecured claim.

1.18    Class means each category of Holders of Claims established under Article II of this Plan pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.19    Confirmation Date means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order.

1.20    Confirmation Hearing means the hearing held by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020 on confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.21    Confirmation Order means the Order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

1.22    Creditors' Committee means the Official Committee of Unsecured Creditors appointed and acting in the Bankruptcy Case, including all individual members thereof, and all professionals retained by the Creditors' Committee pursuant to an Order of the Bankruptcy Court.

1.23    Creditors' Committee Members shall mean Hologic, Inc., Woman's Hospital Foundation, and PBOM, LLC.

1.24    Debtor shall mean Stone Clinical Laboratories, LLC.

1.25     Debtor's Released Parties means (i) the Debtor, (ii) Gary Smith and Blair Barbier, but only to the extent the claim against either is a claim (a) for willful fraud or gross negligence or (b) that is not covered by any applicable policy of insurance and for any claim in excess of the limits of the aforesaid policy of insurance, and (iii) the Creditors' Committee and its past and present members (but only in their capacity as members of the Creditors' Committee); provided, however, that such Released Parties shall only include those that provided services related to the Debtor, the Committee, the Bankruptcy Case, the Plan, or the transactions contemplated by this Plan.  Notwithstanding the foregoing and for the sake of clarity, neither the Debtor's Managing Member nor any holder of an Interest in the Debtor (at any time) shall be a Released Party.

1.26    Deficiency Claim shall mean for Classes 2 and 3 the difference between such creditor's Allowed Claim and such creditor's Allowed Secured Claim.

1.27     Disallowed means all or such part of a Claim or Administrative Expense that is disallowed by an Order of the Bankruptcy Court or other court of competent jurisdiction.

1.28     Disbursing Agent means the Liquidating Trustee as such.

1.29     Disclosure Statement means that certain disclosure statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.30     Disputed Claim means any Claim against the Debtor, including any portion thereof (a) that is neither an Allowed Claim nor a Disallowed Claim or (b) for which a written request for payment has been made, to the extent the Debtor, the Liquidating Trustee or any party in interest has interposed a timely objection or request for estimation, which objection or request for estimation has not been withdrawn or determined by a Final Order of the Bankruptcy Court. Unless a Claim has been Allowed by an Order of the Bankruptcy Court prior to the Effective Date or was specifically listed in the Plan Supplement as an Allowed Claim, the Claim shall be deemed a Disputed Claim.

1.31     Distribution means a distribution from the Debtor's Cash Fund to the Record Holders of Allowed Claims, as set forth in the Plan.

1.32     Distribution Record Date means, with respect to all Classes, the Effective Date or such other date as may be designated in the Confirmation Order as the date of record for which distribution on Claims will be made.

1.33     Effective Date means a Business Day on or after the Confirmation Date specified by the Debtor and the Creditors' Committee in a Notice of Effective Date filed as provided for in the Plan.

1.34     Employee means any individual who worked for the Debtor on an hourly, salaried or other basis.

1.35     Estate means the bankruptcy estate created in the Debtor's Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

1.36     Estate Assets means all Assets of the Estate, and the proceeds thereof, including, but not limited to, the Causes of Action.

1.37     Exhibit means an exhibit to this Plan, the Disclosure Statement, filed herewith or with the Disclosure Statement, or the Plan Supplement.

1.38     File, Filed or Filing means file, filed or filing with the Bankruptcy Court or its authorized designee in the Bankruptcy Case.

1.39     Final Distribution means the Distribution to the Record Holders of Allowed Claims and Interests of the Debtor's remaining Cash Fund in accordance with the Plan upon the

completion of the liquidation of the Debtor's Assets, including the resolution of any Causes of Action.

1.40    Final Order means an Order which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such Order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such Order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such Order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed relating to such Order shall not cause such Order not to be a Final Order.

1.41    Gap Period Claims means claims that qualify for Priority treatment pursuant to 11 U.S.C. §507(b)(3).

1.42    General Unsecured Claim means any Claim against the Debtor that is not an Administrative Expense, a Priority Claim or a Claim in Classes 2, 3, 5 and 8 or Claims that are Disallowed, subordinated, recharacterized or released, whether by operation of law or pursuant to Order of the Bankruptcy Court, written release or settlement, or the provisions of this Plan or otherwise.

1.43    Governmental Unit means the United States, any State thereof, including, but not limited to, the State of Louisiana, any commonwealth, district, territory, municipality, foreign state, parish, department, agency or instrumentality of a State, a commonwealth, district or territory or municipality of a foreign state or other foreign or domestic government.

1.44    Hancock shall mean Hancock Whitney.

1.45    Hancock Secured Claim means the Claim of Hancock that is secured by the money in the Debtor's accounts at Hancock as of the date the Involuntary was filed.  The Hancock Secured Claim is based upon the Hancock's right of set off and statutory lien under applicable state law.

1.46    Holder means an entity holding a Claim as of the Distribution Record Date.

1.47    Impaired means, with respect to any Class of Claims, "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

1.48    Initial Distribution Date means a date selected by the Liquidating Trustee that is not earlier than the Effective Date and not later than thirty (30) days after the Effective Date.

1.49    Interest means, without limitation, any equity security in the Debtor that is of a kind specified in Section 101(16) of the Bankruptcy Code and any options, warrants, puts, calls, registration rights, subscriptions or other similar rights or other agreements, commitments, or outstanding securities obligating the Debtor to issue, transfer, purchase, redeem, register or sell

#6022088v1

any shares of capital stock or other securities, any Claims arising out of any appraisal or dissenter's rights, any Claims arising from rescission of a purchase, sale or other acquisition of any common stock or other equity security (or any right, Claim, or interest in and to any common stock or equity security) of the Debtor, any Claims for damages or any other relief arising from any such purchase, sale, or other acquisition of such common stock or other equity security, and any Claims or damages or any other relief arising from the failure to register or maintain the registration of any common stock or other equity security.

1.50    <u>Lien</u> means, with respect to any interest in property, any mortgage, lien, pledge, charge, security interest, easement or encumbrance of any kind whatsoever affecting such interest in property to secure payment of a debt or performance of an obligation.

1.51    <u>Liquidating Trust</u> means the trust established under the Plan pursuant to the Liquidating Trust Agreement.

1.52    <u>Liquidating Trust Agreement</u> means the agreement creating the Liquidating Trust in a form and substance acceptable to both the Debtors and the Creditors' Committee to be filed as part of the Plan Supplement and to be executed pursuant to Section 5.6 of the Plan setting forth the rights, powers and duties of the Trust and the Trustee to carry out the terms of the Plan and wind down the Debtor's Estate. The Liquidating Trust Agreement will, among other things: (a) establish and govern the Liquidating Trust; (b) set forth the powers and duties of the Liquidating Trustee; and(c) provide for Distributions.

1.53    <u>Liquidating Trustee</u> means Dwayne Murray or any successor trustee of the Liquidating Trust duly appointed pursuant to the Liquidating Trust Agreement, to act as the administrator of the Plan, to make or facilitate Distributions pursuant to the Plan, and to serve as the trustee of the Liquidating Trust.

1.54    <u>Liquidating Trustee Professionals</u> means the employees, agents, financial advisors, attorneys, consultants, independent contractors, representatives, and other professionals retained by the Liquidating Trustee (in their capacities as such).

1.55    <u>Liquidating Trust Oversight Committee</u> means the committee appointed pursuant to this Plan to oversee the Liquidation Trustee's administration of the Plan, in the manner provided in the Plan and the Plan Supplement.

1.56    <u>Liquidating Trust Oversight Committee Members</u> shall mean initially the Creditors' Committee Members and any person subsequently appointed to serve as member or the Liquidating Trust Oversight Committee.

1.57    <u>Local Rules</u> means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Louisiana, as amended from time to time.

1.58    <u>Nole</u> shall mean Nole Holding Corp.

1.59    <u>Nole Secured Claim</u> shall mean any Claim possessed by Nole that is secured by any asset of the Debtor.

- 7 –

1.60    Non-Professional Administrative Expense Claim means an Administrative Expense Claim other than a Professional Administrative Expense Claim.

1.61    The Operating Agreement means the Operating Agreement for the Debtor and any amendments thereto.

1.62    Order means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court on the docket in the Bankruptcy Case (or on the docket of any other court of competent jurisdiction).

1.63    Order for Relief Date means the date on which the Bankruptcy Court entered the Order for Relief, January 10, 2022.

1.64    Pension and Retirement Plan means any Pension or Retirement Plan of the Debtor related to the Employees of the Debtor.

1.65    Person means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, Estate, unincorporated organization, governmental unit (as defined in Section 101(27) of the Bankruptcy Code), or other entity.

1.66    Petition Date means the date of the filing of the Involuntary (July 15, 2021) in connection with the Bankruptcy Case.

1.67    Plan means this Chapter 11 plan of liquidation, including the Plan Supplement, the Exhibits, and all supplements, appendices and schedules thereto, either in its present form or as the same may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.68    Plan Documents means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on or about the Effective Date.

1.69    Plan Proponents means the Debtor and the Creditors' Committee.

1.70    Plan Supplement means the Liquidating Trust Agreement, the designation of the person to serve as the initial Liquidating Trustee, the Causes of Action Exhibit, the designation of Allowed Claims, the list of executory contracts and leases to be assumed or rejected (that have not been assumed or rejected as of the Effective Date of the Plan and potentially assigned and any cure amount owed to the counter-party to such executory contract or lease, and any other relevant documents or agreements.

1.71    Plan Supplement Filing Deadline means the date which is three (3) Business Days prior to the date of the Confirmation Hearing.

1.72    Post-Effective Date Debtor means the Debtor from and after the occurrence of the Effective Date.

1.73    Priority Non-Tax Claim means any Claim against the Debtor, including a Gap Period Claim, other than an Administrative Expense, or a Priority Tax Claim, entitled to priority in payment as provided for in Sections 503 and 507(a) and (b) of the Bankruptcy Code.

1.74    Priority Tax Claim means any Claim against the Debtor by a Governmental Unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.75    Pro Rata means, with respect to a Claim, that proportion of the Claim in a particular Class to the aggregate amount of all Claims in such Class, except in cases where Pro Rata is used in reference to multiple Classes, Pro Rata means the proportion that a Claim of a particular Class to the aggregate amount of all Claims in such multiple Classes.

1.76    Pro Rata Unsecured Distribution means with respect to a Claim in Class 6, a Pro Rata proportion that a particular Claim bears to the Total Allowed Unsecured Claims in Class 6.

1.77    Professional means an entity: (a) employed in the Bankruptcy Case pursuant to an Order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.78    Professional Expense Claims means all Administrative Expense Claims for the compensation of Professionals of the Debtor or for other parties entitled to payment of Professional fees and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to an Interim Compensation Order or any other Order of the Bankruptcy Court.

1.79    Proof of Claim means a proof of Claim Filed against any of the Debtor in the Bankruptcy Case.

1.80    Quantum shall mean Quantum Analytics.

1.81    Quantum Secured Claim means the Claim of Quantum that is secured by certain pieces of equipment upon which Quantum possesses a valid and perfected lien.

1.82    Record Date means such date as the Bankruptcy Court designates in any Order approving voting procedures and the mailing of the Disclosure Statement and Plan to Holders of Claims.

1.83    Record Holder means the Holder of a Claim as of the Record Date.

1.84    Required Reserve Amount means a cash reserve equal to the Distributions that the Debtor and the Liquidating Trustee conclude that Holders of Claims, including potential Administrative Expense Claims, that are neither Allowed nor Disallowed as of the Effective Date would be entitled to under this Plan if such Claims were Allowed.

1.85    Reserve Account means a separate noninterest-bearing bank account which shall be used to pay any Claim not Allowed or Disallowed as of the Effective Date, including potential Administrative Expense Claims, in the amounts and on the terms provided in the Plan.  The Liquidating Trustee shall maintain the Required Reserve Amount in the Reserve Account until such Claims are either Allowed and paid as provided for in this Plan, or Disallowed in full or in part, either by (i) agreement between counsel to the Debtor or the Liquidating Trustee and the Holder of the Disputed Claim or (ii) by Final Order once such Claims become Allowed Claims. Upon payment of all Claims in the amounts and on the terms provided in the Plan, all funds remaining in the Reserve Account shall revert to the Estate and be made available for Distribution in the Final Distribution.  The Plan Supplement shall set forth the Required Reserve Amount.

1.86    Ridgeway shall mean Christopher Ridgeway.

1.87    Ridgeway Subordination Litigation shall mean any proceeding initiated by the Debtor, the Creditors' Committee, and/or the Liquidating Trustee to subordinate and/or recharacterize the claims of Ridgeway, Stone Capital, and/or any of the Stone Entities.

1.88    Rules of Interpretation.  For purposes of this Plan, unless otherwise provided herein:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document, schedule or exhibit Filed or to be Filed means such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (g) subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; (h) the rules of construction set forth in Section 102 of the Bankruptcy Code will apply; (i) any reference to payment or Distribution means to pay, Distribute, or otherwise reserve for the subsequent or potential Distribution of and (j) in computing any period of time prescribed or allowed by this Plan, the provision of Bankruptcy Rule 9006(a), as then in effect, will apply.

1.89    Schedules means the schedules of Assets and liabilities and the statements of financial affairs filed by the Debtor pursuant to Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

1.90    Section 503(b)(9) Claim means any Claim filed against the Debtor pursuant to Section 503(b)(9) of the Bankruptcy Code for goods delivered with the twenty (20) days preceding the Petition Date.

1.91    Secured Claim means, pursuant to Section 506 of the Bankruptcy Code, that portion of a Claim against the Debtor that is reflected in the Schedules or in a Proof of Claim as a Claim which is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtor in and to property of the Estate, to the extent of the value of the Holder's interest in such property as of the relevant determination date or (b) Allowed as such pursuant to the terms of this Plan (subject to the occurrence of the Effective Date). The defined term Secured Claim includes any Claim against the Debtor that is subject to a permissible setoff under Section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.92    Stone Capital shall mean Stone Capital LLC.

1.93    Stone Entity shall mean Stone Capital LLC, Stone Clinical Laboratories of FL, LLC a/k/a Stone Clinical Laboratories of Florida, LLC, Stone Direct Diagnostics, LLC, Stone Entertainment & Production Diagnostics, LLC, Stone Consulting and Management Services, LLC, Stone Biotechnologies, LLC, Stone Capital Group, LLC, Gold Coast Diagnostics, LLC, Stone Diagnostic Laboratories, LLC d/b/a Stone Diagnostics, LLC, Stone Surgical, LLC, and/or FS Properties of Florida, LLC.

1.94    Subsequent Distribution Date means a date selected by the Liquidating Trustee, in his or her discretion and in accordance with the provisions of this Plan, that is, except as set forth otherwise in Section 6 of this Plan, (a) not less than sixty (60) days after the date on which the previous Distribution was made to Holders of Allowed Claims, and (b) on which date the Liquidating Trustee determines that, after taking into account the Liquidating Trustee's anticipated costs associated with the administration of the Post-Effective Date Debtor, there is at least (i) one hundred thousand dollars ($100,000) available to distribute to Holders of Allowed Claims, (ii) sufficient Cash available to pay all Allowed Claims then extant in full in the amounts and on the terms provided in the Plan, whichever is less as between (i) and (ii), or (iii) such other amount constituting a Final Distribution, whichever is less as between (i), (ii), and (iii).

1.95    Total Allowed Unsecured Claims means the aggregate amount of Unsecured Claims in Class 6.

1.96    TVT shall mean TVT 2.0 LLC d/b/a as TVT Capital LLC.

1.97    TVT Secured Claim shall mean the Claim possessed by TVT that is secured by any asset of the Debtor.

1.98    Unimpaired means, with respect to a Claim or Interest, that such Claim or Interest is not "Impaired" within the meaning of Section 1124 of the Bankruptcy Code as a result of being either (a) Reinstated or (b) paid in full and in Cash on or after the Effective Date pursuant to the terms of this Plan or any Order of the Bankruptcy Court.

– 11 –

1.99   <u>Whale</u> shall mean Whale Capital, L.P.

1.100   <u>Whale Subordination Litigation</u> shall mean any proceeding initiated by the Debtor, the Creditors' Committee, and/or the Liquidating Trustee to subordinate and/or recharacterize the claims of Whale, including, but not limited to, the Adversary Proceeding No. 22-1003 pending before the United States Bankruptcy Court for the Eastern District of Louisiana.

B.   <u>Exhibits and Plan Supplement</u>.  All Exhibits and the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits or Plan Supplement shall be timely Filed in accordance with this Plan.  Holders of Claims may obtain a copy of the Filed Exhibits upon written request to the Debtor.  Upon its Filing, the Exhibits may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours.  Upon entry of the Confirmation Order, the documents contained in the Exhibits, the Plan Supplement, and any amendments to the Plan shall be and hereby are approved by the Bankruptcy Court.  The Debtor shall file the Plan Supplement by the Plan Supplement Filing Deadline.

# ARTICLE II

# CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests, except Administrative Expenses, Priority Tax Claims and Priority Non-Tax Claims, are placed in the Classes set forth below.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses and Priority Tax Claims, as described below, have not been classified.

A Claim or Interest is placed in a particular Class or sub-Class only to the extent that the Claim or Interest qualifies within the description of such Class or sub-Class and is in a different Class to the extent that it qualifies within the description of such different Class, but the same portion of a Claim may not be in more than one Class.  A Claim or Interest is also placed in a particular Class for all purposes, including voting, confirmation, and Distribution under this Plan and under Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  However, a Claim or Interest is placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date Debtor.

2.1   <u>Unclassified Claims</u>.  The following Claims are Unimpaired under this Plan.

     (a)    Administrative Expenses.

     (b)    Priority Tax Claims.

     (c)    Priority Non-Tax Claims.

2.2   <u>Classes of Claims and Interests</u>.

(a) *Class 1: Quantum Secured Claim*. To the extent that the Claim possessed by Quantum against the Debtor is determined not to be a Claim arising out of an executory contract or lease, Class 1 shall consist of the Allowed Secured Claim of Quantum secured by certain equipment owned by the Debtor. The property subject to the Quantum lien, if any, shall be abandoned and the difference between the Allowed Claim of Quantum and the value of the abandoned equipment shall share pro-rata in distributions to the Class 6 and the Class 5 and 8 creditors if the claims of the Class 5 and 8 creditors are not subordinated to the Claims of the Class 6 Creditor. The Claim possessed by Quantum has been agreed to between the Debtor and Quantum and is being treated as an executory contract under 11 U.S.C. § 365 that is being rejected by the Debtor. Based upon the treatment of the claim as a "rejected executory contract," Quantum shall not possess a Class 1 Claim and the Claim of Quantum shall be treated as a Claim in Class 6 to the extent of its rejection damages. The Claim of the Class 1 creditor is Impaired and entitled to vote on the Plan.

(b) *Class 2: Atlantes Secured Claims*. Class 2 consists of any Allowed Secured Claim of Atlantes to the extent that such a Claim exists and the Claim is entitled to secured status pursuant to 11 U.S.C. § 506. To the extent that Atlantes is determined, after Notice and hearing, not to possess in whole or in part an Allowed Secured Claim or a portion of the Claim shall be determined not to be an Allowed Secured Claim, the Class 2 creditor shall share Pro Rata in the payments to the Class 6 creditors and such Deficiency Claim shall be included as a Class 6 Claim. The Class 2 creditor has not filed a Proof of Claim by the applicable bar date and an objection to the Claim will be filed. It is believed that the Class 2 creditor will receive no distribution under the Plan. The Claim in Class 2 is Impaired and entitled to vote on the Plan.

(c) *Class 3: Nole Secured Claim.* Class 3 consists of the Allowed Secured Claim of Nole. The Class 3 creditor, on account of its Class 3 allowed secured claim, will receive the sum of $45,000.00 in full satisfaction of such claim. The payment will be made on the Effective Date of the Plan.

(d) *Class 4: TVT.* Class 4 no longer exists.

(e) *Class 5: Whale.* Class 5 consists of the Allowed Claim of Whale. The treatment of such Claims will depend on the resolution of Whale Subordination Litigation. To the extent such Claims are subordinated by compromise or final judgment of a court of competent jurisdiction in connection with the Whale Subordination Litigation, then such subordinated Claims shall be paid only after payment in full of the Claims of the creditors possessing Allowed Claims in Class 1 (to the extent that a Class 1 Claim exists), 2, 3 and 6. Upon payment in full of the Class 1 (if a Class 1 Claim exists), 2, 3 and 6 creditors the Class 5 creditor shall be paid *pari passu* with the Claims of the Class 8 Creditor unless the claim of the

– 13 –

Class 5 creditor is subordinated to such claim, or the Claims of the Class 8 Creditor are subordinated to the Claim of the Class 5 Creditor.  To the extent the Class 5 Claims are not subordinated, they will be paid *pari passu* with Class 6.  The Claims in Class 5 are Impaired and shall be entitled to accept or reject the Plan.

(f)     *Class 6:  General Unsecured Claims*.  Class 6 consists of all General Unsecured Claims and all Claims arising from the rejection of any executory contract against the Debtor. The Deficiency Claims of Classes 1 (if any Class 1 Claim exists), 2 and 3 creditors, if any, shall be paid pro rata with the Class 6 creditors (and potentially the Class 5 and 8 creditors) out of the Cash Fund until such Claims are paid in full.  Holders of Claims in Class 6 are Impaired and shall be entitled to accept or reject the Plan.

(g)     *Class 7:  Interests*.  Class 7 consists of all Interests in the Debtor and all Claims arising out of or relating thereto. After payment in full of the Classes 1 (if a Class 1 Claim exists), 2, 3, 5, 6 and 8 creditors, the Class 7 Interest Holders shall receive all remaining Distributions out of the Cash Fund.  The payments received by the Class 7 Interest Holders shall be Distributed in accordance with the equity ownership in the Debtor.  A dispute exists between Stone Capital and Whale Capital as to each entity's ownership in the Debtor.  This is a dispute between those parties and does not involve the Debtor, except to the extent a determination is made as to ownership of the Debtor between Stone Capital and Whale Capital, the Debtor will either file a partnership tax return or leave the returns that were filed alone.  The partnership return will be filed if Whale Capital is determined to own an interest in the Debtor and no return will be filed if Stone Capital is the sole member." This makes the Amended Plan consistent with Article VI of the final Amended Disclosure Statement.

(h)     *Class 8 Christopher Ridgeway and Stone Capital LLC*.  Class 8 consists of Claims of Christopher Ridgeway and Stone Capital.  To the extent such Claims are subordinated by compromise or final judgment of a court of competent jurisdiction in connection with the Ridgeway Subordination Litigation, then such subordinated Claims shall be paid only after payment in full of the Claims of the creditors possessing Allowed Claims in Classes 1 (to the extent that a Class 1 Claim exists), 2, 3 and 6.  Upon payment in full of the Class 1 (if a Class 1 Claim exists), 2, 3 and 6 creditors and the Class 5 creditor shall be paid *pari passu* with the Claims of the Class 5 Creditor unless the claim of the Class 5 creditor is subordinated to such claim, or the Claims of the Class 8 Creditor are subordinated to such claim. To the extent the Class 8 Claims are not subordinated, they will be paid *pari passu* with Class 6.  The Claims in Class 8 are Impaired and shall be entitled to accept or reject the Plan.

(i)     *Class 9 Hancock*.  Class 9 no longer exists.

- 14 –

# ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

3.1 <u>Unclassified Claims</u>.

(a) *Non-Professional Administrative Expense Claims*. Unless otherwise agreed by the Holder of a Non-Professional Administrative Expense Claim, in full satisfaction, settlement, and release of and in exchange for each Non-Professional Administrative Expense, each Holder of an Allowed Non-Professional Administrative Expense Claim shall receive payment in full, in cash, of any unpaid portion of such Allowed Non-Professional Administrative Expense Claim on the later to occur of: (x) the Effective Date or (y) pursuant to Section 6.1 of the Plan following the Allowance of such Administrative Expense Claim.

(b) *Professional Expense Claims*. Unless otherwise agreed by such Holder, the Professionals who hold Professional Expense Claims shall receive payment in full, in cash, of any unpaid portion of such Allowed Professional Expense Claims subject to the provisions of Sections 328, 330, 331, 503(b) and 506 of the Bankruptcy Code and this Plan, as soon as practicable after Bankruptcy Court approval. The Plan Proponents believe that the Professional Expense Claims that remain to be paid may total $900,000.00.

(c) *Priority Tax Claims*. Unless otherwise agreed by the Holder of a Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, release, discharge of and in exchange for such Priority Tax Claim, at the election of the Liquidating Trustee cash equal to the amount of such Allowed Priority Tax Claim on the Effective Date; provided, however, that any Priority Tax Claim not due and owing or Allowed on the Effective Date will be paid pursuant to Section 6.2 of the Plan when such Claim becomes due and owing or Allowed (as applicable).

(d) *Priority Non-Tax Claims*. In full satisfaction, release, and discharge of and in exchange for each Allowed Priority Non-Tax Claim, the Holder thereof shall receive payment in full, in cash, on the later to occur of: (x) the Effective Date; or (y) after Allowance of such Claim.

(e) *Waterfall Payments to Creditors and Interest Holders.*

(i) The Plan proposed herein is a waterfall plan that mirrors the distribution priorities established by the Bankruptcy Code as modified by the Operating Agreement. The Claims in Class 5 and Class 8 may be subordinated and the Plan takes such potential subordination into account.

– 15 –

(ii)     The Allowed Secured Claims of the Classes 2 and 3 creditors (to the extent that such Claims become Allowed Secured Claims will have their Allowed Secured Claim paid in full from the proceeds of the sale of such creditor's collateral.

(iii)    After payment of the Allowed Secured Claims of the Allowed Secured Claims of the Classes 2 and 3 creditors, all Distributions made by the Liquidating Trustee shall be paid to the Class 6 creditors and those sharing Pro Rata with the Class 6 creditors until such Claims are paid in full.

(iv)     In the event the Class 5 and 8 creditors are subordinated to the claims of the Class 6 creditors and those sharing Pro Rata with them, the Class 5 and 8 creditors shall next be paid in full based upon a determination made by the Court of the relative priority of the Class 5 and 8 creditors under any documents executed by and between the Class 5 and 8 creditors. The priority of payment between the Class 5 and 8 creditors shall be determined by Order of the Court. The Debtor and the Committee take no position on the relative priorities between the Class 5 and 8 creditors.

(v)      After payment in full of the Class 5 and 8 creditors, Distributions out of the Cash Fund shall be made to the Class 7 Interest Holders.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

4.1     Acceptance by an Impaired Class.  In accordance with Section 1126(c) of the Bankruptcy Code and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Claims of such Class that have timely and properly voted to accept or reject this Plan.

4.2     Presumed Acceptances or Rejections by Various Classes.  Classes 1, 2, 3, 5, 6 and 8 are Impaired by this Plan.  Therefore, Holders of such Claims are entitled to vote on this Plan.  Class 7, Holders of Interests, under Section 1126(g) of the Bankruptcy Code are also Impaired under the Plan.  Accordingly, the votes of the Holders of such Interests will be solicited.

4.3     Confirmation Pursuant to Section 1129(a) of the Bankruptcy Code.  If all Classes have either accepted the Plan, been deemed to have accepted the Plan or are not entitled to vote, the Debtor shall request the Bankruptcy Court to confirm the Plan under Section 1129(a) of the Bankruptcy Code.

4.4     Non-Consensual Confirmation.  In the event that it is determined that one or more Impaired Classes of Claims exist, and if any Impaired Class fails to accept this Plan by the requisite statutory majorities, the Proponents reserve the right (i) to confirm this Plan by a "cram-down" of such non-accepting Class pursuant to Section 1129(b) of the Bankruptcy Code and (ii) to propose

- 16 –

any modifications to this Plan and to confirm this Plan as modified, without re-solicitation, to the extent permitted by the Bankruptcy Code. The filing of this Plan shall constitute a motion for the entry of an Order granting the relief set forth in subparagraphs (a) and (b) above, as applicable, at the Confirmation Hearing.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1 <u>Bar Date for Administrative Expenses</u>. Unless subject to the Bar Date Order, any Holder of an Administrative Expense, related to the period preceding the Effective Date, that has not been paid, released, or otherwise settled prior to the Effective Date, shall be required to file a motion or other pleading seeking allowance of such Administrative Claim on or before the thirtieth (30th) day following the Effective Date. Any request for payment of an Administrative Expense that is not timely filed as set forth herein or in any Bar Date Order will be forever barred and Disallowed by operation of confirmation of this Plan and without the need for any party to file any objection or other pleading, and Holders of such Administrative Expenses shall be prohibited from asserting such Administrative Expenses in any manner against the Debtor, the Post-Effective Date Debtor or the Liquidating Trustee. Expenses incurred by or on behalf of the Liquidating Trustee or the Post-Effective Date Debtor, after the Effective Date, shall not be subject to this Section 5.1.

5.2 <u>Cancellation of Claims and Interests</u>. Except as otherwise set forth in this Plan, and except for purposes of evidencing a right to a Distribution to the extent provided by the Plan, on the Effective Date, (a) all agreements and other documents evidencing the Claims or rights of any Holders of such Claims against the Debtor, including, but not limited to, all contracts, notes, guarantees, and mortgages, and (b) all Interests, unless the Debtor's Assets are acquired through a sale of the Interests in the Debtor, shall be canceled. After the transfer of the Debtor's assets and all property that previously comprised "property of the estate" including, but not limited to, all claims and causes of action that was previously possessed by the Debtor, the equity interests in the Debtor, held by the current equity holders, shall be cancelled as a new singular LLC interest issued to Stone Clinical Laboratories, L.L.C., a Florida limited liability company, in exchange for the payment of $25,000.00 and the waiver of any administrative or gap claim filed by Ridgeway or Stone Capital. Ridgeway and Stone Capital are (i) waiving any and all claims for administrative-expense and gap claims that they may have against the estate and (ii) waiving and withdrawing Proof of Claim number 38.

5.3 <u>Revesting of Estate Assets</u>. Notwithstanding Section 1141(b) of the Bankruptcy Code, except as otherwise provided for in this Plan, all Assets, including the Cash Fund and Causes of Action, shall not revest in the Debtor or the Post-Effective Date Debtor, but shall be transferred to the Liquidating Trust subject to the jurisdiction of the Bankruptcy Court under the exclusive control of the Liquidating Trustee, until liquidated and distributed to Holders of Allowed Claims and Interests in accordance with the provisions of this Plan, the Liquidating Trust (to be supplied as a Plan Supplement),and the Confirmation Order.

5.4 <u>Preservation and Retention of Causes of Action, Defenses of the Debtor, and Rights to Object to Claims</u>. Confirmation of this Plan will have no impact upon, and will not render *res judicata,* any: (i) Causes of Action other than those Causes of Action expressly released or limited

under this Plan or the Confirmation Order, (ii) any defenses the Debtor may have (including rights of setoff) in any action brought against it; (iii) the right of any beneficiary of the Trust to file an adversary proceeding seeking to assert it possesses a contractual right to be paid ahead of another beneficiary of the Trust pursuant to 11 U.S.C. § 510(a); or (iv) the right of Christopher Ridgeway, the Stone Entities, and/or Whale Capital to assert a claim under 11 U.S.C. § 510(c) that the claim of Christopher Ridgeway, the Stone Entities, and/or Whale Capital should be subordinated below the claim of such party bringing the Section 510 (c) action.  The Debtor does not waive, relinquish, or abandon (nor shall the Liquidating Trustee be estopped or otherwise precluded from asserting) any right, claim, Cause of Action, defense, or counterclaim that constitutes property of the Estate: (a) whether or not such right, claim, Cause of Action, defense, or counterclaim has been listed or referred to in the Plan, the Schedules, or any other document filed with the Bankruptcy Court; (b) whether or not such right, claim, Cause of Action, defense, or counterclaim is currently known to the Debtor; and (c) whether or not a party in any litigation relating to such right, claim, cause of action, defense or counterclaim filed a proof of Claim in the Chapter 11 Case, filed a notice of appearance or any other pleading or notice in the Chapter 11 Case, voted for or against the Plan, or received or retained any consideration under the Plan.  Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue preclusion, or any similar doctrine, THE FAILURE TO LIST, DISCLOSE, DESCRIBE, IDENTIFY, OR REFER TO A RIGHT, CLAIM, CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, OR POTENTIAL RIGHT, CLAIM, CAUSE OF ACTION, DEFENSE, OR COUNTERCLAIM, IN THE PLAN, THE SCHEDULES, OR ANY OTHER DOCUMENT FILED WITH THE BANKRUPTCY COURT SHALL IN NO MANNER WAIVE, ELIMINATE, MODIFY, RELEASE, OR ALTER ANY RIGHT OF THE LIQUIDATING TRUSTEE TO COMMENCE, PROSECUTE, DEFEND AGAINST, SETTLE, AND REALIZE UPON ANY RIGHTS, CLAIMS, CAUSES OF ACTION, DEFENSES, OR COUNTERCLAIMS THAT THE DEBTOR HAVE, OR MAY HAVE, AS OF THE EFFECTIVE DATE.  In addition, the Debtor expressly reserves and as of the Effective Date the Liquidating Trustee shall have the right to pursue or adopt any Claim alleged in any lawsuit in which the Debtor is a party.

Except as is otherwise expressly provided herein or in the Confirmation Order, nothing in this Plan nor the Confirmation Order shall preclude or estop (i) the Liquidating Trustee from bringing a subsequent action in any court or adjudicative body of competent jurisdiction, to enforce any of its or their respective rights in connection with the Causes of Action or Assets of the Estate. Moreover, the failure to commence any of the Causes of Action prior to the Effective Date shall not constitute res judicata, judicial or collateral estoppel with respect to any Cause of Action.

The Debtor specifically reserves[1] the following claims as causes of action

a)  The following are causes of action against third parties: (i) *Stone Clinical Laboratories, LLC v. Michael Perritt, Sally Behari, Courtney Cole, Sondra Lebreton* (2021-00288),

---

[1]   Notwithstanding the specific reservation of claims contained in this Plan, the Debtor neither waives nor releases and claims it may have against any party, except as expressly set forth herein.  All claims against any party are, therefore, reserved to the maximum extent allowed by applicable law, whether or not specifically set forth.

Civil District Court for the Parish of Orleans, Division "E"; (ii) *Stone Clinical Laboratories, LLC v. Tiffany Montgomery* (2019-11709) Louisiana Twenty-Second Judicial District Court; and (iii) *Stone Clinical Laboratories, LLC v. State of Louisiana, Department of Health C-713721*, 19th Judicial District Court, East Baton Rouge Parish, Section 25;

b) Claims against Stone Capital and its immediate and mediate transferees of funds received from the Debtor within two years of the filing of the involuntary.  It is believed the transfers amount to more than $400,000;

c) Claims against Christopher Ridgeway and Stone Capital that were paid in violation of the Debtors Operating Agreement;

d) Claims against Stone Florida in connection with a loan made by the Debtor to Stone Clinical Laboratories of Florida LLC;

e) Claims asserted in the matter styled Whale Capital L.P on behalf of the Debtor in the matter styled Whale Capital L.P. vs. Stone Clinical Laboratories LLC et al., case number 2021- 04202 on the records of the Civil District Court for the Parish of Orleans that was filed as a derivative action on behalf of the Debtor;

f) Claims against Stone Florida and other Stone Entities in connection with various testing agreements dated January 1,2022 and toxicology tests performed by the Debtor for Stone Florida which have not been paid;

g) Intentional violation of the automatic stay by Whale Capital;

h) Any claims set forth above against any of the individual Stone Entities is also expressly reserved as to all of the Stone Entities;

i) Claims against Whale Capital for failure to disclose issues related to its principals; and

j) Claims identified in the Plan Supplement.

5.5    <u>Conflicts of Interest</u>.  Should any member of the Liquidating Trust Oversight Committee have or develop a conflict of interest such that recusal is warranted, said member shall recuse herself from consideration of the issue that pertains to the conflict. Should the Liquidating Trustee believe that any member of the Liquidating Trust Oversight Committee has a conflict of interest and should that member refuse to recuse, then the Liquidating Trustee may petition the Court for an order requiring recusal.

5.6    <u>Effective Date</u>.  The Plan shall be effective on the date selected by the Debtor that is no earlier than the: (x) the day after which each condition set forth in Article VIII of the Plan has been satisfied or waived or (y) the sixtieth day following the entry of the Confirmation Order unless extended after Notice and Hearing.

5.7    The Liquidating Trustee.  On or about the Confirmation Date, the Liquidating Trustee shall enter into the Liquidating Trust Agreement.  The Liquidating Trust Oversight Committee shall oversee the actions of the Liquidating Trustee as set forth herein and in the Liquidating Trust Agreement.  The Liquidating Trustee's appointment will be effective on the Effective Date. The attorney-client privilege, the attorney work product doctrine and any similar privilege against disclosure, and all other similar immunities, including all documents and confidential documents, including but not limited to confidential and/or privileged internal communications of the Officers of the Debtor and any Professionals or committees or committee members of the Debtor that concern or relate in any way to the Chapter 11 Case, any Claims, any actions or matters prior to the filing of or during the Chapter 11 Case, or any matters or Claims or actions dealt with or related to any releases or exculpations set forth in this Plan, or relating to property of the Debtor under section 541(a) of the Bankruptcy Code, shall remain in the Estate and shall be subject to the sole control of the Liquidating Trustee. Any dispute over whether such privileges, immunities or documents are subject to the sole control of the Liquidating Trustee shall be determined by the Bankruptcy Court.

5.8    Limitations on Liability.  The Liquidating Trustee and the Liquidating Trust Oversight Committee Members will not incur liability to any person by reason of discharge of the Liquidating Trustee's duties as set forth in this Plan or in the Liquidating Trust Agreement, except in the event of willful misconduct or intentional fraud by the Liquidating Trustee.  The Barton Doctrine shall be applicable to the Liquidating Trustee.  For purposes of clarity, the Liquidating Trustee shall only be liable, if at all, for his own individual acts or omissions and shall not be liable for the acts or omissions of any other person.  The Liquidating Trustee is specifically authorized to make distributions after a judicial determination provided for the Allowance or Disallowance of such Claim, and the Liquidating Trustee shall have no duty or obligation to reserve for any such Claim pending an appeal absent a timely stay pending appeal obtained by a party with respect to such Claim Allowance or Disallowance.

5.9    Rights, Powers, and Duties of the Post-Effective Date Debtor and the Liquidating Trustee. The Liquidation Trustee shall have all of the rights, powers, and duties necessary to carry out its responsibilities under this Plan.  Additionally, the Liquidating Trustee, subject to supervision by the Liquidating Trustee Oversight Committee, may bring or otherwise pursue all Claims and Causes of Action on behalf of the Debtor, the Post-Effective Date Debtor, and the Estate that could otherwise be brought by a trustee or an examiner appointed under the Bankruptcy Code, that are not otherwise expressly released by this Plan or the Confirmation Order.  Without limiting the generality of the foregoing, and except as otherwise set forth in this Article V, the Liquidating Trustee's rights, powers, and duties include, but are not limited to:

(a)    Objecting to claims (including, but not limited to, administrative, priority, gap period, unsecured and secured claims);

(b)    Litigating the subordination or reclassification of claims;

(c)    liquidation of the Estate Assets, including Causes of Action, and any Assets of the Post-Effective Date Debtor;

#6022088v1

(d) investment of liquid assets in various reserve accounts and maintenance of the same;

(e) calculating and paying Distributions in accordance with the terms of this Plan or as otherwise provided for in an Order by the Bankruptcy Court to Holders of Allowed Claims and Interests;

(f) employing, supervising, and compensating professionals retained to represent the interests of the Post-Effective Date Debtor;

(g) making and filing tax returns for the Post-Effective Date Debtor and/ or the Estate, as may be required;

(h) subject to the terms of this Plan, objecting to or seeking the subordination or recharacterization of Claims filed against the Debtor or the Estate or as set forth in the Schedules, except for Claims that have been previously Allowed by Final Order or pursuant to terms of the Plan;

(i) seeking the estimation of contingent or unliquidated Claims filed against the Debtor, the Post-Effective Date Debtor, or the Estate pursuant to Section 502(c) of the Bankruptcy Code;

(j) seeking determination of tax liability for the Debtor or the Post-Effective Date Debtor under Section 505 of the Bankruptcy Code;

(k) filing, prosecuting, settling or otherwise resolving the remaining Causes of Action on behalf of the Debtor and the Post-Effective Date Debtor;

(l) seeking permission to destroy the Debtor's books and records and/or abandonment of any remaining Assets that have *de minimis* value to the Estate;

(m) closing the Bankruptcy Case;

(n) dissolving and winding up the Post-Effective Date Debtor;

(o) exercising all powers and rights, and taking all actions contemplated by or provided for in this Plan or in the Liquidating Trustee Agreement; and

(p) making Distributions under the Cash Fund.

5.10    <u>Compensation of the Liquidating Trustee</u>.  The Liquidating Trustee and its professionals will be compensated from the Estate Assets as set forth in the Plan Supplement and the Liquidating Trust Agreement.

5.11    <u>Successor Liquidating Trustee</u>.  Should the Liquidating Trustee initially appointed pursuant to the terms of the Plan be removed or become unable or unwilling to continue in such

- 21 –

role, then the Liquidating Trust Oversight Committee shall select a successor subject to approval of the Bankruptcy Court.

5.12    Appointment of Successor Liquidating Trust Oversight Committee Members.   To the extent that a Liquidating Trust Oversight Committee Member resigns the successor Liquidating Trust Oversight Committee Member shall be appointed by the remaining Liquidating Trust Oversight Committee Members.

5.13    Continued Existence.   The Debtor shall continue in existence as the Post-Effective Date.   Debtor, pursuant to the terms of its operating agreements, by-laws, and other limited liability company governance documents, as if the same were in effect prior to the Effective Date, except that on or as soon as practicable after the Effective Date, if the equity interests in the Debtor have not been acquired by a third party, the operating agreements of the Post-Effective Date, Debtor will be restated to, among other things, (i) authorize the issuance of one new membership interest in the Debtor to be held by the Liquidating Trustee in accordance with the terms of this Plan, (ii) prohibit the issuance of non-voting equity securities, and (iii) limit the activities of the Post-Effective Date Debtor to matters related to the implementation of this Plan, the monetization of the Debtor's Assets and to matters reasonably incidental thereto.   After the closing of the sale, the Debtor's name was changed to SC Laboratories LLC.

5.14    Directors, Members, and Managers of the Debtor.   On the Effective Date, the Liquidating Trustee will succeed to all the rights and powers of the directors, members, managers of the Debtor or its properly selected appointees and such directors, managers or appointees will be deemed to have resigned on the Effective Date with such members being replaced by the Liquidating Trustee.   Thereafter, the Liquidating Trustee will cancel all existing membership interests in the Debtor and will issue a new membership interest to Stone Clinical Laboratories, L.LC., a Florida limited liability company, subject to the transaction specified in Section 5.2 of this Plan..

5.15    Plan Settlements.   Upon the Effective Date, the Liquidating Trustee shall be empowered and authorized to settle or compromise any Cause of Action subject to approval by Order of the Court after Notice and Hearing.   The Liquidating Trustee shall not seek approval of any (i) a settlement of any Cause of Action or (ii) resolution of any objection to a proof of claim in excess of $25,000.00 without the approval of the Liquidating Trustee Oversight Committee. Notwithstanding the foregoing, if the Oversight Committee does not approve a recommended settlement by the Liquidating Trustee, the Liquidating Trustee shall have the right to seek Bankruptcy Court approval for the settlement.

5.16    Sale or Disposition of Estate Assets and assets of Post-Effective Date Debtor.   Upon the Effective Date, the Liquidating Trustee shall be empowered and authorized to sell, assign, transfer, abandon, or otherwise dispose of Estate Assets or assets of the Post-Effective Date Debtor in accordance with the Plan and without Bankruptcy Court approval when the Face Amount of the Estate Asset or asset of the Post-Effective Date Debtor is $25,000.00 or less; provided, however, that the Liquidating Trustee will, on a quarterly basis, file a notice with the Bankruptcy Court of all Estate Assets and assets of the Post-Effective Date Debtor that have been sold, assigned, transferred, abandoned or otherwise disposed of and include in the notice (i) the Face Amount of the Estate Asset or asset of the Post-Effective Date Debtor, and (ii) the amount the Estate or the

- 22 –

Post-Effective Date Debtor received from the disposition of the Estate Asset or asset of the Post-Effective Date Debtor.

Bankruptcy Court approval is required for the sale, assignment, transfer, abandonment, or other disposition of any Estate Asset or asset of the Post-Effective Date Debtor where the Face Amount of the Estate Asset or asset of the Post-Effective Date Debtor is more than $25,000.00; provided, however, that the Liquidating Trustee shall not request Bankruptcy Court Approval for any such sale, assignment, transfer, abandonment, or other disposition without the consent of the Liquidating Trustee Oversight Committee.

## ARTICLE VI

## COMPROMISE AND SETTLEMENTS AND PROVISIONS GOVERNING DISTRIBUTIONS

6.1 <u>Payment of Administrative Expenses</u>. The Liquidating Trustee shall pay Allowed Administrative Expenses in full, without interest, in Cash, on or as soon as practicable after the later of: (v) the date on which such Allowed Administrative Expense becomes due in the ordinary course of business and in accordance with the terms and conditions of the particular agreement(s) governing such obligation, (w) the Effective Date, (x) the date that the Administrative Expense becomes an Allowed Administrative Expense; or (y) at such other time and in such other manner as may be agreed upon in writing between the Holder of the Allowed Administrative Expense and the Liquidating Trustee.

6.2 <u>Payment of Allowed Priority Tax Claims</u>. The Liquidating Trustee shall pay Allowed Priority Tax Claims in full, in Cash, on or as soon as practicable after the later of: (x) the Effective Date, (y) the date that the Claim becomes an Allowed Priority Tax Claim, or at such other time and in such other manner as may be agreed upon in writing between the Holder of the Allowed Priority Tax Claim and the Liquidating Trustee; provided, however, that any Priority Tax Claim not due and owing on the Effective Date will be paid when such Claim becomes due and owing.

6.3 <u>Distribution to the Holders of Claims and Interests</u>. The Liquidating Trustee, with the consent of the Liquidating Trust Oversight Committee, shall make one or more Distributions to the Holders of Allowed Claims and Interests (in the order of priority set forth in this Plan) as of the Distribution Record Date, pursuant to and in accordance with the terms of this Section. Unless agreed to in writing between the Holder of the Allowed Claim or Interest and the Liquidating Trustee, the Liquidating Trustee shall pay Allowed Claims and Interests as soon as practicable after the later to occur of: (x) the Effective Date, or (y) the date that the Claim or Interest becomes an Allowed Claim or Interest pursuant to the terms of this Plan. If a Distribution to a Holder of an Allowed Claim or Interest in any class would be less than $100, such Distribution may be held until the Final Distribution. Notwithstanding any other provision of this Plan, Liquidating Trustee shall not be required to, but may in its sole discretion, make any Distribution of less than $25.00 to the holder of any Allowed Claim or Interest. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole cent. Notwithstanding anything to the contrary, prior to making any Distributions to the Holder of an Allowed Claim or Interest, the Liquidating Trustee shall first

– 23 –

reserve for amounts due, or which may be due, the payments required to be made to other classes of Claims under this Plan that may have a prior or equal right of payment to that of the Holder of Allowed Claims Holders of Claims, except that after Disallowance of such Claim after objection thereto, the Liquidating Trustee shall have no duty or obligation to reserve for the Claim pending an appeal absent a timely stay pending appeal obtained by a party with respect to such Claim Disallowance.

6.4     Establishment of Reserve Account.  On the Effective Date, or as shortly after the Effective Date as practicable, which shall not exceed sixty (60) days after the Effective Date, the Liquidating Trustee shall deposit into the Reserve Account an amount equal to the Required Reserve Amount.  Such funds shall remain in the Reserve Account until the Disputed Claims become Allowed or Disallowed in full or in part, either by (i) agreement between the Liquidating Trustee and the Holder of the Disputed Claim or (ii) by Order of the Bankruptcy Court.  The Liquidating Trustee shall also deposit into the Reserve Account a sufficient amount for the payment of contingent and unliquidated Claims as contemplated by the Plan.

6.5     Final Distribution.  Upon the completion of the liquidation of the Debtor, the Post-Effective Date Debtor's and the Estate's assets, including the resolution of any Causes of Action, and resolution of all objections to Claims, the Liquidating Trustee shall make the Final Distribution by distributing the Cash remaining in the Estate, including any funds remaining the Reserve Account, Pro Rata to the Holders of Allowed Claims and Interests as provided in this Plan.  If after making the Final Distribution, and after payment of all fees and expenses, including all outstanding U.S. Trustee fees, the Estate has any remaining Cash, and the Liquidating Trustee determines that any further distributions would be de minimus, such Cash shall be donated to St. Francis Animal Sanctuary.

6.6     Delivery of Distributions.  The Distributions shall be made to Holders of Allowed Claims or Interests as of the Distribution Record Date:  (i) at the address set forth on the Proof of Claim Filed by a Holder of an Allowed Claim or Interest, (ii) at the address set forth in any written notices of address change Filed by such Holder, (iii) at the addresses reflected in the Schedules if neither a Proof of Claim or Interest nor a written notice of address change has been Filed, or (iv) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtor's books and records.

6.7     Distributions by Disbursing Agent.  Other than as specifically set forth in this Plan, the Liquidating Trustee, shall make all Distributions required to be made under this Plan.

6.8     Undeliverable and Unclaimed Distributions.

(a)     Holding and Investment of Undeliverable and Unclaimed Distributions.  If the Distribution to any Holder of a Claim or Interest is returned to the Post-Effective Date Debtor, the Liquidating Trustee as undeliverable or is otherwise unclaimed (including by the failure to timely negotiate a check issued to such Holder), no further Distributions shall be made to such Holder unless and until the Liquidating Trustee is notified in writing of such Holder's then current address.

#6022088v1

(b)     Failure to Claim Undeliverable Distributions.  Any Holder of a Claim or Interest that does not assert a Claim pursuant to this Plan for an undeliverable or unclaimed Distribution within the later of (x) one (1) year after the Effective Date and (y) six months after the Allowance of such Claim shall be deemed to have forfeited its Claim for such undeliverable or unclaimed Distribution and shall be forever barred and enjoined from asserting any such Claim for an undeliverable or unclaimed Distribution against the Debtor, the Post-Effective Date Debtor, or the Estate or its property.  In such cases, any Cash for Distribution on account of such Claims for undeliverable or unclaimed Distributions shall become the property of the Estate free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary.  Nothing contained in this Plan shall require any Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.

(c)     Notwithstanding any other provision of this Plan, (i) each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution, and (ii) no Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Liquidating Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon any disbursing agent in connection with such Distribution. Any property to be distributed pursuant to this Plan shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution under this Plan.

6.9     Objections to Claims.  Objections to and the prosecution of any objections to Claims after the entry of the Effective Date may be made only by the Liquidating Trustee.  Except as provided in this Plan, any objection to the allowance of a Claim, other than Claims allowed by the terms of this Plan, must be Filed by the Liquidating Trustee within one hundred twenty (120) days after the Effective Date (or, within one hundred twenty (120) days after the Filing of such Claim, whichever is later).  The Liquidating Trustee shall be authorized to seek an extension of such deadline by *ex parte* motion.  Any objection not filed by such deadline shall be deemed waived, and the Claim shall be an Allowed Claim in the amount set forth on the Proof of Claim Filed by the Holder of such Claim.  Notwithstanding the foregoing, the holder of an interest in the Trust may petition the Court for authority to file a claim objection if the Trustee has elected not to file an objection to a claim and has not settled such claim.  The Court may authorize the beneficiary to file such objection if such beneficiary establishes that (a) a colorable objection exists to the claim and (b) the Trustee's actions in not filing the objection was unreasonable.  Notwithstanding the foregoing, this Section 6.9 shall have no application to any application for professional compensation or allowance of expenses.

6.10     Distributions Pending Appeal of Disallowance.  Notwithstanding any other provision in this Plan, payments or Distributions may be made by the Liquidating Trustee to

– 25 –

Holders of Allowed Claims or Interests without reserve for payment of the amount, if any, of Disallowed Claims unless the Holder of such Disallowed Claim obtains a timely stay pending appeal with respect to any portion of such Claim that has been Disallowed. Further, no funds may be recovered from any Holder of a Claim receiving such a Distribution or from anyone else in the event of reversal of any Order disallowing a Claim.

6.11 <u>Contingent and Unliquidated Claims</u>.. As soon as is practicable, the Liquidating Trustee shall take action seeking the estimation for purposes of Distribution of contingent or unliquidated Claims filed against the Debtor, the Post-Effective Date Debtor, or the Estate pursuant to Section 502(c) of the Bankruptcy Code. Upon determination of the estimated amount of such contingent or unliquidated Claim, the Liquidating Trustee shall maintain Cash in an amount equal to the amount payable under the Plan of such estimated Claim in the Reserve Account until such Claims are resolved in full or in part, either by (i) agreement between counsel to the Debtor or the Liquidating Trustee and the Holder of the Claim or (ii) by Order of the Bankruptcy Court.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1 <u>Rejection of Remaining Executory Contracts</u>. All executory contracts and unexpired leases of the Debtor which are not assumed and/or assigned, or rejected, pursuant to the Plan Supplement prior to the Confirmation Date or pursuant to a Motion to Assume and Assign or Motion to Reject shall be deemed rejected as of the entry of the Confirmation Order. The specific Executory Contracts to be assumed and/or assigned shall be set forth in the Plan Supplement.

7.2 <u>Rejection Claims</u>. Any party asserting a Claim for monetary damages as a result of the rejection of an executory contract or unexpired lease pursuant to Section 7.1 of this Plan shall submit a Proof of Claim within thirty (30) days of the later of the Order specifically rejecting such contract or the Effective Date and serve such Proof of Claim upon Debtor's counsel and the Liquidating Trustee within thirty (30) days following the Effective Date. If no rejection Claim is filed by a party on account of the rejection of an executory contract or unexpired lease pursuant to this Section 7.2 of the Plan, such Claim, if any, shall be forever Disallowed and barred.

## ARTICLE VIII

## CONFIRMATION AND CONSUMMATION OF THE PLAN

8.1 <u>Conditions to Confirmation</u>. The following shall be the only condition to confirmation: the Confirmation Order is entered by the Bankruptcy Court and is in form and substance reasonably satisfactory to the Plan Proponents.

8.2 <u>Conditions to the Effective Date</u>. The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied (or will be satisfied by the occurrence of the Effective Date): (i) the Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to the Debtor, (ii) the Liquidating Trustee shall have been duly appointed and approved by the Bankruptcy Court, and entered into the Liquidating Trustee Agreement, (iii) no stay of the Confirmation Order is in

#6022088v1

effect, and (iv) the majority of the sales contemplated by the Plan shall have closed.  The Effective Date shall occur on or before ninety (90) days following the entry of an order confirming this Plan.

8.3     Notice of the Effective Date.  Promptly following the occurrence of the Effective Date, the Debtor shall file a Notice of Occurrence of Effective Date stating that the Effective Date has occurred and the date thereof on the docket in the Bankruptcy Case.

## ARTICLE IX

## EFFECT OF PLAN CONFIRMATION

9.1     Binding Effect.   Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any Holder of a Claim against or Interest in the Debtor and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under this Plan and whether or not such Holder has accepted this Plan.

9.2     Exculpation.  From and after the Effective Date, the Debtor's Released Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Holder of a Claim or Interest, or any other party in interest, or any of its respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of its successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Bankruptcy Case, the sale of the Debtor's assets, formulating, negotiating or implementing this Plan, the solicitation of acceptances of this Plan, the pursuit of approval of the Disclosure Statement and confirmation of this Plan, the confirmation of this Plan, the Plan Documents, the consummation of this Plan or the administration of this Plan or the property to be distributed under this Plan; provided, however, that the foregoing provision shall not apply to an act or omission that is determined by a Final Order of the Bankruptcy Court to have constituted willful misconduct or gross negligence.  Any of the Debtor's Released Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to its duties and responsibilities under the Plan.

9.3     Injunction Related to Exculpation.  All Persons that have held, hold or may hold any Claims exculpated pursuant to Section 9.2 will be permanently enjoined from taking any of the following actions against the Debtor's Released parties or any of its property on account of such exculpated liabilities:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or Order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien; (iv) except as provided herein, asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due a Released Party; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.

9.4     Directors and Officers Liability Claims. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations of the Debtor to any of its present or former officers (with the exception of Gary Smith and Blair Barbier but only to the extent a claim is asserted against Gary Smith or

Blair Barbier in excess of any directors and officers insurance), directors, or managers arising under any state or other non-bankruptcy law or arising under the Bankruptcy Code or Bankruptcy laws for any act or omission or breach of duty of such officer, director, or manager, officers to the extent of any insurance coverage for such indemnity obligations as to which no Proof of Claim need be filed. For the avoidance of doubt, this Plan and the Confirmation Order are without prejudice to the rights of any Persons other than the Debtor (i) under any directors' and officers' liability insurance policies, or (ii) for indemnity from the Debtor and Reorganized Debtor to the extent of any insurance coverage for such indemnity obligations.

9.5     <u>Satisfaction of Claims and Termination of Interests</u>.  Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, and release of, all Claims and Interests of any nature whatsoever against the Debtor or its Estate and Assets, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests.

9.6     <u>Injunction</u>.  Except as otherwise provided in this Plan or the Confirmation Order, from and after the Effective Date all Persons who have held, hold or may hold Claims against or Interests in the Debtor are (i) permanently enjoined from taking any of the following actions against the Estate or property thereof on account of any such Claims or Interests and (ii) permanently enjoined from taking any of the following actions against any of the Debtor, the Post-Effective Date Debtor, the Liquidating Trustee or their property on account of such Claims or Interests:  (A) commencing or continuing, in any manner or in any place, any action, or other proceeding; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or Order; (C) creating, perfecting or enforcing any lien or encumbrance; (D) asserting any right of setoff (other than an actual cash security deposit in the possession of the party asserting a right of set-off), subrogation or recoupment of any kind; and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; <u>provided</u>, <u>however</u>, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of this Plan.

Upon completion of all payments required under the settlement, the injunction shall become permanent to the extent of the payments made under the settlement.  The Liquidating Trustee and any guarantor shall have the right to independently seek enforcement of this injunction provision.  This injunction provision is an integral part of the Plan and is essential to its implementation.

9.7     <u>Term of Bankruptcy Injunction or Stays</u>.  All injunctions or stays provided for in the Bankruptcy Case under Section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

## ARTICLE X

## MISCELLANEOUS PROVISIONS

10.1     <u>Retention of Jurisdiction</u>.  Following the Confirmation Date and the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over the Bankruptcy Case and the

#6022088v1

provisions of this Plan and the Confirmation Order, to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a) hear and determine motions, applications, adversary proceedings, and contested matters pending before or commenced after the Effective Date;

(b) hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of any Claim, and to enter any Order requiring the filing of Proof of any Claim before a particular date;

(c) estimate any Claim at any time, including, without limitation, during litigation concerning any objection to such Claim, including any pending appeal;

(d) ensure that Distributions to Holders of Allowed Claims and Interests are accomplished as provided in this Plan;

(e) enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f) issue or construe such Orders or take any action as may be necessary for the implementation, execution, enforcement and consummation of this Plan and the Confirmation Order, and hear and determine disputes arising in connection with the foregoing;

(g) hear and determine any applications to modify this Plan, to cure any defect or omission or to reconcile any inconsistency in this Plan, the Disclosure Statement or in any Order of the Bankruptcy Court including, without limitation, the Confirmation Order;

(h) hear and determine all applications for Professional Fees;

(i) hear and determine other issues presented or arising under this Plan, including disputes among Holders of Claims and arising under agreements, and the documents or instruments executed in connection with this Plan;

(j) hear and determine any action concerning the recovery and liquidation of Estate Assets, wherever located, including without limitation, litigation to liquidate and recover Estate Assets that consist of, among other things, the Causes of Action, or other actions seeking relief of any sort with respect to issues relating to or affecting Estate Assets;

(k) hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtor or the Estate including, without limitation, matters concerning federal, state and local taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(l)     hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code; and

(m)     enter the Final Decree closing the Bankruptcy Case upon a request for such Final Decree by the Liquidating Trustee.

10.2     <u>Governing Law</u>.  Except as otherwise mandated by the Bankruptcy Code, the Bankruptcy Rules or the Local Rules, as applicable, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of Louisiana.

10.3     <u>Headings</u>.  The headings of articles, paragraphs, and subparagraphs of the Plan are inserted for convenience only and shall not affect the interpretation of any provision of the Plan.

10.4     <u>Time</u>.  Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day that is not a Business Day, then the time for the next occurrence or happening of said event shall be extended to the next day which is a Business Day.

10.5     <u>Severability</u>.  Should any provision of the Plan be determined to be unenforceable after the Effective Date such determination shall in no way limit or affect the enforceability and operative effect of any and all of the other provisions of the Plan.

10.6     <u>Modification</u>.  The Plan may only be altered, amended, or modified under Section 1127 of the Bankruptcy Code or as otherwise permitted by applicable law at any time prior to the Confirmation Date with the express written consent of both the Debtor and the Committee.  After the Confirmation Date and prior to the substantial consummation of this Plan, any party in interest in the Bankruptcy Case may, so long as the treatment of Holders of Claims or Interests under this Plan are not materially adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and intents of this Plan; <u>provided</u>, <u>however</u>, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or Order of the Bankruptcy Court.

10.7     <u>Revocation</u>.  This Plan, prior to the entry of the Confirmation Order by the express written consent of both the Debtor and the Committee, may be revoked or withdrawn.  If the Plan is revoked or withdrawn, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtor.

10.8     <u>Plan Controls</u>.  In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence. In the event of any inconsistency between any provision of any of the foregoing documents, and any provision of the Confirmation Order, the Confirmation Order shall control and take precedence.

10.9    Statutory Fees.  The Debtor, or the Liquidating Trustee on behalf of the Debtor, shall pay all fees payable pursuant to 28 U.S.C. § 1930.

10.10    Dissolution of the Creditors' Committee.  On the Effective Date, the Creditors' Committee, if any, shall be dissolved and its members shall be deemed released of any continuing duties, responsibilities and obligations in connection with this Bankruptcy Case or the Plan and its implementation, and the retention and employment of the Creditors' Committee's attorneys, accountants and other agents shall terminate, except with respect to:  (i) the Final Fee Hearing; or (ii) any appeals of the Confirmation Order through the date such appeals are finally decided, settled, withdrawn or otherwise resolved.

10.11    Deleted

10.12    Effectuating Documents.  Dwayne Murray, on behalf of the Debtor,  and the Liquidating Trustee are authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such other actions as either the Plan Proponents or the Liquidating Trustee determine are necessary or appropriate to effectuate and implement the provisions of the Plan. All such actions shall be deemed, without further action or formality of any kind, to be authorized, approved and ratified in all respects without the need for any corporate formalities, approvals, meetings, consents or authorizations, and all such actions shall be deemed to have occurred as of the Effective Date in accordance with applicable law.

10.13    Operating Reports and U.S. Trustee Fees.   Post-confirmation, the Liquidating Trustee shall continue to file such operating reports as are required by the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and shall continue paying such U.S. Trustee fees as are owed, until such time as the Bankruptcy Case is closed.

10.14    Final Decree.  Subsequent to the Final Distribution, the Liquidating Trustee shall cause to be Filed a certification of counsel requesting the entry of the Final Decree.

10.15    Post-Confirmation Notice.  Pursuant to Bankruptcy Rule 2002 and any applicable Local Rule, notice of all post-Confirmation matters for which notice is required to be given shall be deemed sufficient if served upon counsel for the U.S. Trustee's office, counsel to the Debtor, counsel for the Liquidating Trustee, and all persons on the Bankruptcy Rule 2002 service list. With the exception of the Debtor and the U.S. Trustee, any Person desiring to remain on the Debtor's Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Liquidating Trustee within thirty (30) days subsequent to the Effective Date.  Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order.  Persons who do not file a request for continued service shall be removed from the Debtor's Bankruptcy Rule 2002 service list.

10.16    Deadline and Hearing for Substantial Contribution Claims. To the extent any Entity seeks payment or reimbursement of compensation for services rendered or reimbursement of expenses incurred in connection with or during the Chapter 11 Case under section 503(b)(3)(D) of the Bankruptcy Code, such Entity shall file its application or request for such payment on or before the deadline established by the Bankruptcy Court for the filing of the objections to the confirmation of the Plan.  If such application or request for compensation or reimbursement of expenses under

#6022088v1

section 503(b)(3)(D) of the Bankruptcy Code is not filed in accordance with the foregoing, (a) such application or request shall be forever barred from assertion against the Debtor, its respective Estate, and the Reorganized Debtor, and (b) the holders of any such Claims are barred from recovering any Distributions under the Plan on account thereof. Any such application or request shall be heard and determined at the Confirmation Hearing or as otherwise provided by order of the Bankruptcy Court.

10.17 Section 1146 Exemption. Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer or exchange of any security, or the execution, delivery or recording of an instrument of transfer on or after the Confirmation Date shall be deemed to be made pursuant to and under this Plan, including, without limitation, any such acts by the Debtor, if on the Effective Date, and the Liquidating Trustee, if after the Effective Date, and shall not be taxed under any law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order and the Plan, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

## ARTICLE XI

## FINAL FEE HEARING

11.1 The Professional Fee Claim Bar Date. Any and all applications for the final allowance of Professional Fee Claims shall be Filed and served upon counsel to the Debtor, counsel to the Creditors' Committee, the United States Trustee, and all parties entitled to notice pursuant to Bankruptcy Rule 2002 within sixty (60) days of the Effective Date.

11.2 Final Fee Hearing. A hearing on final allowance of Professional Fee Claims shall be held as soon as practicable after the Professional Fee Claim Bar Date. Any notice of such hearing shall be served upon counsel for the Creditors' Committee, all Professionals, the United States Trustee and all parties entitled to notice pursuant to Bankruptcy Rule 2002.

## ARTICLE XII
## REQUEST FOR CONFIRMATION

12.1 Request for Confirmation. The Debtor requests confirmation of this Plan in accordance with Section 1129(a) and/or Section 1129(b) of the Bankruptcy Code.

January 13, 2023

**Stone Clinical Laboratories LLC**

*/s/Dwayne Murray*
Name: Dwayne Murray

Douglas S. Draper (#5073)

#6022088v1

HELLER, DRAPER & HORN, L.L.C.
ddraper@hellerdraper.com
650 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone: (504) 299-3300/ Fax: (504) 299-3399
*Attorneys for Stone Clinical Laboratories LLC*


Michael D. Rubenstein (# 22860)
LISKOW & LEWIS, APLC
mdrubenstein@liskow.com
1001 Fannin Street, Suite 1800
Houston, TX 77002
Telephone: (713) 651-2953
Fax: (713) 651-2908
*Attorneys for the Official Committee of Unsecured Creditors*


## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on the 14th day of January, 2023, the above and foregoing was served through the Court's ECF Electronic Notification System by the Clerk of the Court on the following parties who have registered for such notice:

- **Alicia M. Bendana**   abendana@lawla.com, rmichel@lawla.com;seaton@lawla.com
- **Christy Renee Bergeron**   Christy.Bergeron@usdoj.gov
- **Kenneth C. Bordes**   kcb@kennethbordes.com
- **Greta M. Brouphy**   gbrouphy@hellerdraper.com, vgamble@hellerdraper.com
- **Robin B. Cheatham**   cheathamrb@arlaw.com, vicki.owens@arlaw.com;mary.cuenca@arlaw.com
- **Bruce Cranner**   bcranner@talleyanthony.com
- **Albert J. Derbes**   ajdiv@derbeslaw.com, derbespacer@gmail.com;derbeser72443@notify.bestcase.com
- **Douglas S. Draper**   ddraper@hellerdraper.com, vgamble@hellerdraper.com
- **Thomas M. Flanagan**   tflanagan@flanaganpartners.com, scaesar@flanaganpartners.com;mpadilla@flanaganpartners.com;erc@flanaganpartners.com;cscott@flanaganpartners.com;grivera@flanaganpartners.com
- **Patrick R Follette**   prf@chehardy.com, kl@chehardy.com
- **Patrick S. Garrity**   pgarrity@derbeslaw.com, derbeser72443@notify.bestcase.com
- **Amanda Burnette George**   Amanda.B.George@usdoj.gov
- **Olivia Greenberg**   olivia-obrien-9200@ecf.pacerpro.com
- **Paul R. Hage**   phage@jaffelaw.com
- **Anders F Holmgren**   aholmgren@flanaganpartners.com, scaesar@flanaganpartners.com;mpadilla@flanaganpartners.com;erc@flanaganpartners.com;cscott@flanaganpartners.com;grivera@flanaganpartners.com

– 33 –

- **Dennis M. LaBorde**    laborde@bhbmlaw.com, rchauvin@bhbmlaw.com
- **John M. Landis**    jlandis@stonepigman.com, boneil@stonepigman.com
- **Michael E. Landis**    mlandis@hellerdraper.com, Vgamble@hellerdraper.com
- **E. Trent McCarthy**    tmccarthy@themccarthylawfirm.com
- **Mark Mintz**    mmintz@joneswalker.com, mark-mintz-4822@ecf.pacerpro.com
- **Dwayne M. Murray**    dmm@murraylaw.net, la18@ecfcbis.com;trustee3@murraylaw.net
- **Bryan Jules O'Neill**    boneill@derbeslaw.com, bardeneaux@derbeslaw.com
- **Stewart Peck**    speck@lawla.com, rmichel@lawla.com
- **L. Marlene Quarles**    mquarles@dwyercambre.com
- **Ryan James Richmond**    ryan@snw.law
- **Michael D. Rubenstein**    mdrubenstein@liskow.com, lschnabel@Liskow.com
- **Matthew Sherman**    mas@chehardy.com, kl@chehardy.com
- **John Paul Stanford**    jstanford@qslwm.com
- **James Wesley Thurman**    jthurman@lawla.com
- **Office of the U.S. Trustee**    USTPRegion05.NR.ECF@usdoj.gov
- **Nicholas Ryan Varisco**    nrv@chehardy.com
- **David F. Waguespack**    waguespack@carverdarden.com, docket@carverdarden.com;plaisance@carverdarden.com
- **A.J. Webb**    awebb@fbtlaw.com

*/s/ Michael D. Rubenstein*
Michael D. Rubenstein

#6022088v1